In the Matter of the Foster Care Status of SHAKIBA P. COMMIS-
SIONER OF SOCIAL SERVICES OF THE CITY OF NEW YORK,
Appellant; BARTOLA L. et al., Respondents.

First Department, July 2, 1992

**APPEARANCES OF COUNSEL**

*Alan G. Krams* of counsel *(Barry P. Schwartz* with him on

the brief; *O. Peter Sherwood, Corporation Counsel,* attorney), for appellant.

*Steven A. Feldman* of counsel *(Feldman & Feldman,* attorneys), for respondents.

*Bruce A. Young* for Regina P., respondent.

*Carol Goldstein* of counsel *(Lenore Gittis, Law Guardian),* for the child.

**OPINION OF THE COURT**

KUPFERMAN, J.

Recognizing that "[i]t is the unique mandate of our courts to enforce the obligations we owe to children under our social contract", this case presents yet another example of the difficulties confronted by the courts of this and other States in attempting to fashion orders placing children in appropriate settings, while at the same time attempting to reunite separated families (Wachtler, Ch. J., *The Courts in the Lives of Children,* 64 NY St BJ, No. 4, at 7 [May/June 1992]).

At the time of her birth on Staten Island, on June 16, 1988, Shakiba P. tested positive for cocaine. The next day her mother Regina P. apparently walked out of the hospital without being discharged, leaving her baby there. The hospital contacted the Commissioner and the mother's maternal aunt, Joyce D., contacted the Child Welfare Administration and advised that the family would like four of the mother's five children, including the newborn baby, placed with them. Respondent Bartola L., Joyce D.'s daughter, has apparently been caring for the child since she was less than a week old. The other children who were then living with their maternal grandmother and great grandmother were later placed with Joyce D.

On July 11, 1988, a neglect proceeding was commenced against Regina P., whose whereabouts were unknown at the time, resulting in an order of disposition, entered October 25, 1988, which placed the children, including Shakiba, in the custody of the petitioner for a period of 18 months. Through inadvertence or neglect, petitioner allowed such placement to lapse when it expired on April 25, 1990. Nonetheless, the child remained in the care of Bartola L. and her husband Norvelle who, allegedly with petitioner's permission, moved to Greensboro, North Carolina, in June 1990.

Thereafter, on August 17, 1990, Regina P. voluntarily

agreed to place the child with the Commissioner pursuant to Social Services Law § 384-a until such time as she completed a drug rehabilitation program in which she was enrolled at the time. Such agreement was approved by the Family Court on December 3, 1990 pursuant to Social Services Law § 358-a, although it should be noted that the form petition failed to inform the court that the child resided in North Carolina with her foster parents, stating instead that she was removed from her home on August 17, 1990 and resided at petitioner's office in the Bronx. The Law Guardian for the child also claims in its appellate brief that neither it nor the foster parents were given notice of that proceeding.

In the meantime, in a verified petition, dated September 27, 1990, the foster parents sought the equivalent of an order to show cause from the Guilford County Juvenile Court in North Carolina, in which they recited how they came to have custody of Shakiba and alleged that on or about April 25, 1990 they had been advised by petitioner's caseworkers that the court had given an 18-month extension of Shakiba's placement with them and that, in May 1990, when they advised the new caseworker that they intended to move to Greenboro, she indicated that she would initiate the necessary paperwork required by the Interstate Compact on the Placement of Children (Social Services Law § 374-a) (hereinafter the Compact) with the help of her supervisor, a Mr. Stevenson.

According to the petition, the foster mother was in daily contact with Mr. Stevenson for the next three weeks regarding the move and their North Carolina home was approved for foster care from July 24, 1990 through March 1991. A week before their planned move, however, the foster parents were advised by Mr. Stevenson's supervisor, a Mr. Ferguson, that Mr. Stevenson had no authority to authorize the move, which was the responsibility of petitioner's Staten Island office.

When the foster mother told Mr. Ferguson that she had been trying for approximately one month to secure permission to take Shakiba to North Carolina, that their belongings were packed, that their lease expired May 31, 1990, and that they planned to depart on June 6, 1990, he contacted a Mr. Tiger, who approved the move because the foster mother had made an effort to comply with all procedures. According to the foster parents, Mr. Tiger also stated that the necessary paperwork would be rushed. However, they advised the court that, since arriving in North Carolina, they had received no paper-

work and that their attorney had been unsuccessful in her efforts to verify the status of such paperwork.

The foster parents asked the court to issue an order requiring New York to apprise North Carolina of the status of Shakiba's placement pursuant to the Compact in that they would like to keep the child who had been with them her entire life and considered them her parents, but did not wish to be in violation of any law or regulation.

By order entered September 28, 1990, the Guilford County Juvenile Court found that it had jurisdiction over the parties and the subject matter because Shakiba was presently residing in Greenboro and pursuant to North Carolina General Statutes § 7A-523 (a) (1) and that it was in her best interests for her to remain with her foster parents pending the resolution of the matter. It directed her New York caseworker to report to it regarding the status of Shakiba's placement pursuant to the Compact and ordered that the child remain with her foster parents during the pendency of the proceedings.

Thereafter, on February 19, 1991, the foster parents petitioned the Juvenile Court, asking it to inquire into the status of Shakiba's placement in North Carolina pursuant to the Compact and to waive the requirement that such placement be pursuant to the Compact. Without formally appearing, the Commissioner submitted an affirmation in opposition, dated March 14, 1991, in which she advised the court that the child was legally in her care and custody; that the Compact continues her jurisdiction over the child; that the North Carolina court did not have jurisdiction within the meaning of the Uniform Child Custody Jurisdiction Act (Domestic Relations Law art 5-A); that Regina P.'s voluntary placement of Shakiba with the Commissioner had been approved by the Family Court; and that she proposes to return the child to her natural mother and had so notified the foster parents' attorney by certified mail.

After hearing the matter on March 15 and 19, 1991, the Juvenile Court, in its decision entered April 17, 1991 nunc pro tunc as of March 19, 1991, found that North Carolina had initiated contact with New York on November 7, 1990, when it requested it to submit the necessary paperwork so as to bring the placement into retroactive compliance with the Compact and that New York's first response was a February 19, 1991 request for a home study; that such home study,

which was almost completed, found that the foster parents' home was a good environment for Shakiba; that she interacts well with their two small children; that the foster parents were gainfully employed; and, that it would be in the child's best interests to remain with them.

The court also found that Shakiba is a bright, happy, well-adjusted and well-cared-for child, who had been a resident of Guilford County since June 1990, and that Regina P. had left the drug treatment center in February 1991, but had not contacted the petitioners to date to inquire about Shakiba's welfare.

It concluded that it had jurisdiction of the parties and the subject matter; that it was in Shakiba's best interests for the foster parents to have physical custody of her at the time; and, that proceedings under the Compact had been instituted and were in progress.

On April 4, 1991, the foster parents then commenced an action in the Guilford County District Court, seeking temporary and permanent custody of Shakiba. An ex parte emergency custody order was issued on April 5, 1991 and the court awarded the foster parents temporary custody on April 26, 1991 nunc pro tunc to April 12, 1991. Thereafter, by letter to the foster mother, dated May 24, 1991, the child's New York caseworker and her supervisor requested that she return Shakiba to the Child Welfare Administration office in Staten Island and stated that it had come to their attention that the foster mother was not a relative within the third degree and was therefore ineligible to be a kinship foster parent. They further notified her that foster care payments she had previously been receiving were terminated effective May 23, 1991. A July 29, 1991 notation in the North Carolina caseworker's file indicates that North Carolina child welfare services to Shakiba were being terminated because New York had withdrawn its request for her placement pursuant to the Compact.

In August 1991, the Commissioner moved in the District Court to vacate the temporary custody order for lack of jurisdiction or, in the event the court found that it had jurisdiction, requested that the court decline to exercise it. In support of the motion, the Commissioner alleged that Shakiba's maternal aunt Joyce D. had given the child to her daughter Bartola L., the foster mother, without her knowledge or consent; that the maternal aunt received four emergency foster care payments totaling $4,210.72 for the period from

July 11, 1988 to December 24, 1988; and, that when the Commissioner discovered that child was with Bartola L., she consented to the child remaining there because the probation report was favorable.

She further alleged that Bartola L. misrepresented to the probation investigator and the North Carolina court that "foster parent papers have already been processed on her behalf at SSC (now the Child Welfare Administration)"; that, she misrepresented her relationship with the child in order to be approved as a kinship foster parent; that Norvelle L. had never been put forth as a resource and was never investigated; and, that the petitioners were told numerous times that they could not move to North Carolina with Shakiba until an interstate compact had been completed with North Carolina.

As to Regina P., the Commissioner stated that her records indicated that Bartola L. had said that Regina P. had visited Shakiba in September 1989 and had seen all her children, including Shakiba, in March 1990 shortly before she entered the residential drug rehabilitation program; that she was presently drug free, employed and actively seeking housing for herself and her children; and that once such housing was obtained, the Commissioner planned to begin the process of discharging her children to her.

After a hearing on January 27 and 28, 1992, the District Court, in an order entered March 19, 1992, nunc pro tunc as of January 28, 1992, concluded, *inter alia,* that two prior North Carolina Judges of coequal power had assumed subject matter jurisdiction; that the Commissioner should have appealed those rulings; and that North Carolina has personal jurisdiction and subject matter jurisdiction in this case and is the proper forum to hear the issue of the custody of Shakiba. The Commissioner has appealed that order to the North Carolina Court of Appeals.

This proceeding, to review the foster care status of Shakiba pursuant to Social Services Law § 392, was brought on for hearing by the Commissioner by notice of application for review of foster care status dated March 13, 1992 and returnable March 24, 1992. In her petition, dated January 24, 1992, the Commissioner alleged that Regina P. has been drug free almost two years, has found a part-time job and suitable housing, maintains interest in the child and is planning for her return. The petition further alleges that the foster parents, with whom the child resides in North Carolina, refuse to

cooperate with the agency and were requested to return the child to New York. The Commissioner's plan is continued foster care until the mother and child are deemed ready for reunification.

At the commencement of the hearing on March 24, 1992, the Family Court stated that its understanding was that the North Carolina order currently on appeal was issued at a time when the child was neither placed as the result of a child protective proceeding, nor voluntarily placed, when the Commissioner assumed her mandated responsibility pursuant to Social Services Law § 395.

When counsel for the Commissioner, it now appears incorrectly, agreed with that characterization, the court stated: "It seems to me, the Judge down there takes the same position as to the Commissioner's mandated responsibility as I do", and dismissed the petition for lack of jurisdiction.

The Family Court incorrectly concluded that it has no jurisdiction over this matter. Indeed, the foster parents acknowledge that New York retains continuing jurisdiction over the matter, but urge that the Family Court should defer to the exercise of jurisdiction by a sister State, which they contend is the more appropriate forum.

Whether or not it may ultimately be determined that North Carolina is the more appropriate forum, the Family Court was nevertheless required, pursuant to the Uniform Child Custody Jurisdiction Act, to stay rather than dismiss, the foster care review proceeding before it and communicate with the North Carolina court to the end that the issue may be litigated in the more appropriate forum and that appropriate information be exchanged to that end (Domestic Relations Law § 75-g [3]). This is required where there is at least a colorable claim of sister State jurisdiction (Vanneck v Vanneck, 49 NY2d 602, 610-611).

Among the purposes of the Act (Domestic Relations Law art 5-A) are to avoid jurisdictional competition and conflict with courts of other States in matters of child custody and to promote cooperation with the courts of other States to the end that a custody decree is rendered in that State which can best decide the case in the interest of the child (Domestic Relations Law § 75-b [1] [a], [b]). The law also seeks to prevent situations where children are removed from one State in order to obtain custody awards in another (see, Matter of Murray-Lee v Lewis, 136 AD2d 517, 518).

■ As to New York's continuing jurisdiction over the matter, while the Commissioner acknowledges that Shakiba's neglect placement with Bartola L. was inadvertently allowed to lapse in April 1990, she nevertheless continued her supervision of Shakiba's welfare by continuing to pay Bartola L. for her foster care and by granting permission for the child to be taken to North Carolina in June 1990.

That permission was obviously granted in the context of an interstate placement of the child pursuant to the Compact. Article V of that Compact provides that the sending agency shall retain jurisdiction over the child sufficient to determine all matters relating to the custody of the child which it would have had if the child had remained in the sending agency's State (Social Services Law § 374-a [1]). Until a child so placed is adopted, reaches majority, becomes self-supporting or is formally discharged from foster care, the Family Court has the obligation to review ongoing foster care under Social Services Law § 392 *(Matter of Walker,* 87 AD2d 435, *revd on other grounds on dissenting opn of Markewich, J.,* 58 NY2d 811).

■ Although the Commissioner acknowledges, in her appellate brief, that she did not follow the placement procedures of the Compact before allowing Shakiba to be taken to North Carolina, article X of the Compact provides that "[t]he provisions of this compact shall be liberally construed to effectuate the purposes thereof." (Social Services Law § 374-a [1].) One of those purposes is for the party States to cooperate with each other in the interstate placement of children to the end that appropriate jurisdictional arrangements for the care of children will be promoted *(id.,* art I [d]). In addition, although article IV of the Compact provides for penalties for noncompliance with it, these do not include the loss of jurisdiction over the child by the sending agency. The common thread running throughout both the Compact and Uniform Act is interstate cooperation so as to foster the best interests of the child.

Moreover, contrary to the Law Guardian's position that Shakiba had ceased to be a foster child in the Commissioner's custody at the time the foster care review proceeding was commenced in January 1992, any lapse in custody ended on August 17, 1990, when Regina P. voluntarily placed Shakiba in the Commissioner's custody pursuant to Social Services Law § 384-a, which deems such transfer a transfer of the care and custody of the child for purposes of Social Services Law §§ 358-a and 392. Thus, whether the subsequent Family Court

approval of such placement, which is otherwise presumptively valid, was invalid in any respect for lack of notice to the foster parents *(see,* Social Services Law § 358-a), the Commissioner's claim of custody based upon Regina P.'s written agreement was clearly superior to that of the foster parents at the time of their first application to the North Carolina courts and whatever defects there may have been should have no effect on the Family Court's continuing jurisdiction over Shakiba pursuant to section 358-a (2-a) or section 392 of the Social Services Law *(see, Matter of George O.,* 115 Misc 2d 782, 788 [the purpose of the statute is "to ensure that children once placed in foster care were not forgotten"]).

While both North Carolina and New York, as signatories to the Uniform Child Custody Jurisdiction Act, are committed to the same end, it should be borne in mind that New York's detailed laws governing foster children are predicated upon the ability of the Commissioner and the Family Court to exercise control over the planning for the welfare of a foster child. Such control should not be deemed to have lapsed merely because of bureaucratic inefficiency or neglect. "Reluctance on the part of foster parents to deliver children placed in their care presents more than mere administrative inconvenience for the Department of Social Services and adoptive agencies: it seriously jeopardizes their continued utilization of the foster care program." *(People ex rel. Ninesling v Nassau County Dept. of Social Servs.,* 46 NY2d 382, 388, *rearg denied* 46 NY2d 836.)

Thus, the foster parents should not be permitted, by design or otherwise, to bootstrap their status as foster parents into something more by the simple expedient of removing their foster child from New York, with or without the Commissioner's approval. Unlike the old adage, in matters concerning parental rights and the best interests of a foster child, possession is not nine tenths of the law.

Finally, throughout its consideration of the matter, the Family Court should keep in mind the limited nature of the foster parents' status as such *(see, Smith v Organization of Foster Families,* 431 US 816, 856-863 [Stewart, J., concurring]), Regina P.'s parental rights as Shakiba's natural mother *(see generally, Matter of Bennett v Jeffreys,* 40 NY2d 543) and, above all, the best interests of the child.

Accordingly, the order of the Family Court, New York County (Jeffry H. Gallet, J.), entered March 24, 1992, which

dismissed the Commissioner's petition seeking foster care review pursuant to Social Services Law § 392 on the ground that the Family Court lacked jurisdiction, should be reversed, on the law, the petition reinstated and the matter should be remanded to the Family Court to consult with the North Carolina courts in accordance with Domestic Relations Law § 75-g (3) to determine, among other matters, the status of the pending appeal in that State and the extent to which the two States can cooperate in this matter, and, after such consultations, for further appropriate proceedings to settle the custody of the child, without costs.

Motion to strike portions of respondent Regina P.'s brief as dehors the record granted only to the extent of deeming any references to material dehors the record stricken, without costs.

MILONAS, J. P., WALLACH and SMITH, JJ., concur.

Order, Family Court, New York County, entered March 24, 1992, reversed, on the law, the petition reinstated and the matter remanded to the Family Court to consult with the North Carolina courts in accordance with Domestic Relations Law § 75-g (3) to determine, among other matters, the status of the pending appeal in that State and the extent to which the two States can cooperate in this matter, and, after such consultations, for further appropriate proceedings to settle the custody of the child, without costs and without disbursements. Motion to strike portions of respondent Regina P.'s brief as dehors the record granted only to the extent of deeming any references to material dehors the record stricken, without costs.