■ In the Matter of RAYMOND SWAIN, Appellant, v BECKY VOGT, Respondent. (And Another Related Proceeding.) [614 NYS2d 780] —Crew III, J. Appeal from an order of the Family Court of Tompkins County (Friedlander, J.), entered May 20, 1993, which, in two proceedings pursuant to Family Court Act article 6, dismissed petitioner's applications to, *inter alia,* hold respondent in violation of a prior order of visitation.

The parties to these proceedings have one child, Brandon, born in January 1989. By stipulation and order entered August 14, 1990, it was determined, *inter alia,* that respondent would have custody of Brandon and that she would not relocate with him outside of Tompkins County without petitioner's express written permission. The stipulation and order further provide that upon disagreement between the parties, either may petition Family Court for a review of visitation *de novo.* It is undisputed that on or about May 10, 1991, respondent left New York with Brandon and relocated in Maine without petitioner's permission or modification of the order and stipulation. Respondent claims that such relocation was necessary for her own safety and Brandon's safety because petitioner was physically and emotionally abusing them.

Within days of respondent's departure from New York, petitioner filed petitions with Family Court charging that respondent violated the custody order and seeking custody of Brandon. These proceedings, however, were adjourned to procure personal service on respondent inasmuch as the summonses mailed to her were returned to Family Court and she did not appear on the initial court date. Although Family Court directed petitioner's counsel to file an order embodying this determination, that was never done.

In February 1992 and April 1992, respectively, petitioner again filed petitions with Family Court seeking custody of Brandon and charging that respondent violated the custody order. As a result of the summonses mailed to respondent being returned, Family Court ordered, *inter alia,* that respon-

dent be personally served and that her failure to appear would result in the transfer of custody to petitioner. Respondent ultimately answered and cross-petitioned for custody in June 1992, although never personally appearing before Family Court.

In July 1992, respondent filed custody proceedings in Maine. Thereafter, in September 1992, respondent moved to dismiss petitioner's petition for custody on the ground that Family Court lacked jurisdiction, which was denied. In its decision, however, Family Court expressly noted that an inquiry into the proceedings commenced in Maine was necessary before conducting a hearing in this matter. By letter dated January 22, 1993 from petitioner's counsel, Family Court was apprised of the status of the Maine proceedings. By order dated May 14, 1993, Family Court, *sua sponte,* dismissed the petitions. This appeal by petitioner ensued.

Initially, it must be noted that Family Court's order dismissing the petitions fails to provide the parties or this Court with the benefit of an explanation for its order. Notwithstanding, the record before us reveals that, pursuant to Domestic Relations Law article 5-A, Family Court properly dismissed the petitions.

It is axiomatic that Family Court, having not yet made a decree concerning custody in this case, may decline to exercise its jurisdiction if it finds that it is an inconvenient forum to make a custody determination and that Maine is a more appropriate forum *(see,* Domestic Relations Law § 75-h [1]) and such finding can be made *sua sponte (see,* Domestic Relations Law § 75-h [2]). This issue, of course, only arises when the court possesses jurisdiction under Domestic Relations Law § 75-d. Here, it is noteworthy that petitioner concedes that Family Court has jurisdiction in this case. Thus, the only issue presented is whether Family Court abused its discretion in dismissing the petitions.

Domestic Relations Law § 75-h (3) sets forth the factors which must be considered in determining whether New York or Maine is the appropriate forum to litigate these proceedings. In analyzing these factors, we are of the opinion that it is in the best interest of Brandon for this State to decline jurisdiction on the ground that Maine is the more appropriate forum *(see,* Domestic Relations Law § 75-h). Although petitioner's alacrity in bringing the initial petition for custody resulted in Family Court's determination that, for jurisdictional purposes, New York is Brandon's home State, the record

before us reveals that Brandon does not presently live in New York *(see, Bloomfield v Bloomfield,* 170 AD2d 884, 886; *Steinman v Steinman,* 80 AD2d 892, 893);* rather, Brandon, now five years old, has lived in Maine with respondent for over three years. Moreover, respondent has always had sole custody of Brandon and averred that he has adjusted well in Maine and enjoys a loving and caring environment there. Furthermore, although not condoning respondent's removal of Brandon from New York without petitioner's express permission, her averments that she removed Brandon from New York because petitioner was physically abusing both her and, more importantly, Brandon are pertinent and cannot be ignored *(cf., Matter of Grover v Grover,* 144 AD2d 852, 853). Indeed, in March 1990, respondent successfully obtained a permanent order of protection against petitioner.

Under these circumstances, we are of the opinion that there is substantial evidence that Brandon's *"present* [and] *future* care, protection, training, and personal relationships [are] more readily available [in Maine]" (Domestic Relations Law § 75-h [3] [c] [emphasis supplied]; *see, Matter of Clarke v Clarke,* 124 AD2d 379), and that Maine has a closer connection with Brandon *(see,* Domestic Relations Law § 75-h [3] [b]) and " 'optimum access to relevant evidence' " *(Vanneck v Vanneck,* 49 NY2d 602, 610 [citation omitted]). Consequently, we conclude that Brandon's best interest will be served if Maine assumes jurisdiction and renders a determination with respect to custody *(cf.,* Domestic Relations Law § 75-i).

Petitioner asserts that this Court should not reward respondent for interfering with his visitation with Brandon. While we recognize that the policy considerations for discouraging absconding with a child are compelling, these imperatives must be subordinated to the best interest of Brandon *(see, Matter of Van Houten v Van Houten,* 156 AD2d 694, 697). Deterring abductions and unilateral removals of children is but one of the goals of Domestic Relations Law article 5-A *(see,* Domestic Relations Law § 75-b [1] [e]). Its purpose also includes, *inter alia,* "discourag[ing] continuing controversies over child custody in the interest of greater stability of home environment and of secure family relationships for the child" (Domestic Relations Law § 75-b [1] [d]) and "assur[ing] that litigation concerning the custody of a child take place ordinarily in the state with which the child and his family have the closest connection and where significant evidence concerning his care, protection, training, and personal relationships is most readily available, and that courts of this state decline

the exercise of jurisdiction when the child and his family have a closer connection with another state" (Domestic Relations Law § 75-b [1] [c]). We must remain vigilant that the ultimate issue here is what is in Brandon's best interest, not whether respondent should be punished for her actions (see, Matter of Nehra v Uhlar, 43 NY2d 242). Furthermore, evidence of respondent's conduct in this regard is certainly a factor that petitioner can place before the Maine courts and thus be taken into account in Maine's ultimate resolution of the issues.

The record does not indicate, however, that Family Court communicated with the Maine courts in order to assure that jurisdiction will be exercised and that a forum will be available to the parties (see, Domestic Relations Law § 75-h [4]). We, therefore, remit the matter to Family Court to resolve this issue.

Mikoll, J. P., Mercure and Yesawich Jr., JJ., concur.

Peters, J. (dissenting). To concur in the majority decision would condone this custodial parent's willful violation of a court order when she fled the jurisdiction of this State, absconded with the child, and thereafter manipulated court process to suit her own needs. Her conduct was particularly egregious since a permanent order of protection had been issued as well as an order which provided her the unfettered opportunity to apply for a modification of visitation. Before leaving the State, she failed to petition to enforce or modify either order.

It is undisputed that by stipulation and order entered August 14, 1990, it was determined, inter alia, that custody of the infant child was granted to respondent, visitation was granted to petitioner and respondent was ordered not to relocate with such child outside of Tompkins County without petitioner's express permission or further court order. Notwithstanding such order, on or about May 10, 1991, respondent fled this jurisdiction with the child and relocated to Maine without first securing petitioner's permission or a modification of the court order. It is further undisputed that within days of respondent's departure from the State, petitioner filed petitions with Family Court charging a violation of the court's order and seeking custody of the child. It is also undisputed that petitioner attempted to personally serve respondent with process outside of the State but was unable to do so since respondent secreted herself and the child. When all attempts at service proved to be futile, petitioner filed and

then was forced to refile his petitions. When process was again unsuccessful, Family Court finally ordered, *inter alia,* that respondent be personally served and that her failure to appear at the scheduled hearing would result in a transfer of custody to petitioner and the issuance of a warrant for her arrest. Respondent nevertheless failed to appear and simply answered and cross-petitioned for custody.

Thereafter, respondent filed a custody petition in Maine and moved to dismiss petitioner's application before Family Court in New York contending that the court lacked jurisdiction under the Uniform Child Custody Jurisdiction Act (Domestic Relations Law § 75-d) (hereinafter UCCJA). Although Family Court denied such application on the ground that New York was the "home state" of the child, it ordered an inquiry into the status of the Maine proceedings. At the court's request, petitioner's counsel telephoned the clerk of the court in Maine and determined that although a custody petition had been filed, no orders had yet been issued. Family Court was apprised of the status of the Maine proceedings by a letter from petitioner's counsel dated January 22, 1993 and, by order dated May 14, 1993, dismissed the New York petitions *sua sponte.*

As was noted by the Court of Appeals in *Matter of Bennett v Jeffreys* (40 NY2d 543): "The resolution of cases must not provide incentives for those likely to take the law into their own hands. Thus, those who obtain custody of children unlawfully, particularly by kidnapping, violence, or flight from the jurisdiction of the courts must be deterred. Society may not reward, except at its peril, the lawless because the passage of time has made correction inexpedient. Yet, even then, circumstances may require that, in the best interest of the child, the unlawful acts be blinked" *(supra,* at 550). *(See, Matter of Lang v Lang,* 9 AD2d 401, 408-410, *affd* 7 NY2d 1029.) The resolution of this issue as suggested by the majority can only provide far-reaching incentive for "those likely to take the law into their own hands" *(Matter of Bennett v Jeffreys, supra,* at 550). Initially, Family Court correctly ruled that it had jurisdiction pursuant to Domestic Relations Law § 75-d (1) (a) (ii) since it found that petitioner had promptly filed a petition alleging a violation of the order after learning of respondent's flight to Maine. To now permit Maine to become the "home state" of the child for purposes of the UCCJA under a "best interests" analysis would permit the mother "to bootstrap * * * [her] status * * * by the simple expedient of removing * * * [the] child from New York, with or without the * * *

[father's] approval. Unlike the old adage, in matters concerning parental rights and the best interests of a * * * child, possession is not nine tenths of the law" *(Matter of Shakiba P., 181 AD2d 138, 147, lv dismissed 80 NY2d 925).*

Even accepting respondent's hearsay allegations of child maltreatment as her excuse for fleeing, I reiterate that respondent had obtained a permanent order of protection in March 1990, prior to the award of visitation to petitioner, yet failed to attempt to enforce such order. I also note that respondent could have sought immediate permission from Family Court to leave the jurisdiction. Clearly, she failed to avail herself of all legal remedies and chose, instead, to flout court process when it suited her.

Although recognizing the best interest analysis engaged in by the majority, I fail to find "the unlawful acts * * * blinked" *(Matter of Bennett v Jeffreys, supra,* at 550). I note that at least one enunciated goal of the UCCJA is to "deter abductions and other unilateral removals of children" (Domestic Relations Law § 75-b [1] [e]) and that "interference with the relationship between a child and a noncustodial parent by the custodial parent has been said to be an act so inconsistent with the best interests of the child as to per se raise a strong probability that the offending party is unfit to act as a custodial parent" *(Leistner v Leistner,* 137 AD2d 499, 500; *see, Daghir v Daghir,* 82 AD2d 191, *affd* 56 NY2d 938).

In the retention of jurisdiction pursuant to Domestic Relations Law § 75-d, I note that the parties could procure all relevant testimony pursuant to Domestic Relations Law § 75-r while in their respective States and that hearings to adduce evidence or have social studies made with respect to custody can be obtained pursuant to Domestic Relations Law § 75-s. Accordingly, I find no reason to transfer jurisdiction of this matter to Maine and would reverse and remit this matter to Family Court.

Ordered that the order is modified, on the law, without costs, by remitting the matter to the Family Court of Tompkins County for further proceedings not inconsistent with this Court's decision, and, as so modified, affirmed.