■ In the Matter of THOMAS E. DONAHUE, Respondent, v MICHELLE L. BUISCH, Appellant. (And Three Other Related Proceedings.) [696 NYS2d 254] —Peters, J. Appeals (1) from two orders of the Family Court of Schuyler County (Callanan, Sr., J.), entered September 30, 1996 and October 11, 1996, which, *inter alia*, granted Thomas E. Donahue's application, in a proceeding pursuant to Family Court Act article 6, for sole custody of the parties' two children, and (2) from an order of said court, entered August 8, 1997, which, *inter alia*, in three proceedings pursuant to Family Court Act articles 6 and 8, awarded sole custody of one of the children to Thomas E. Donahue.

Thomas E. Donahue (hereinafter the father) and Michelle L. Buisch (hereinafter the mother) are the parents of Joshua (born in 1987) and Jasmin (born in 1992). They lived together as a family intermittently from 1986 until April 1994 when they entered into a stipulation providing for joint custody, with primary residence of the children with the mother. Thereafter, the parties apparently reconciled and, despite their numerous domestic disputes, lived together with the children until an incident in January 1996 which prompted the mother to file a family offense petition. That petition resulted in the issuance of an ex parte temporary order of protection removing the father from the family home and prohibiting him from having any further contact with the family. The order was later modified to allow supervised visitation.

One day after the issuance of the temporary order of protection, a representative for the paternal great-grandmother, who owned the family home, informed the mother by letter that they were to immediately vacate the residence. Moving to temporary quarters nearby for a short period of time, the mother ultimately moved with the children to her aunt's home in North Carolina. Her failure to notify the father of their whereabouts resulted in his filing, in February 1996, of a peti-

tion for custody of the two children.\* Despite the appointment of a Law Guardian in May 1996 and his investigation, the mother's whereabouts remained unknown until June 1996. By that time, she had rented her own residence and found employment in North Carolina.

In August 1996, all parties appeared before Family Court with counsel. A hearing was scheduled for September 1996 to determine whether the mother had a valid reason for removing the children from this jurisdiction. At that hearing, extensive testimony regarding the parties' acrimonious relationship was received. The court determined that the mother was not justified in leaving and in precluding the father from having contact with the children. A full hearing with respect to the children's custody was scheduled for October 11, 1996 with interim custody awarded to the mother. Arrangements were also made for the father to pick up the children in North Carolina on September 9, 1996 and bring them back to New York for visitation with him until the commencement of the hearing. When he arrived in North Carolina on such date, she refused him visitation.

The mother failed to appear on October 11, 1996 for the custody hearing, alleging insufficient funds to allow for travel. Upon her default, Family Court issued a permanent award of custody of both children to the father who thereafter drove to North Carolina to pick them up. The following month, the mother began a publicized walk from North Carolina to New York to protest the custody decision. Upon her return, she sought either to, *inter alia*, set aside the default order or modify it.

A hearing was held in May and June 1997 on all pending matters. By stipulation, all prior testimony from the September 1996 hearing was incorporated. At the conclusion of testimony from 14 witnesses and the introduction into evidence of over 30 exhibits, Family Court found, *inter alia*, that it was in the best interests of the children for the mother to have custody of Joshua and for the father to have custody of Jasmin. The mother appeals.

Upon our review, we find that the October 11, 1996 default order of custody should have been vacated. The mother proffered testimony, supported by the record and the affidavit of Charles Sattenfield, Joshua's counselor at Randolph County Mental Health Services in North Carolina, that due to the

---

\* In April 1996, the father filed an amended custody petition which was the petition heard by Family Court.

child's sudden out-of-control behavior manifested by pacing and strange vocalizations, she had good reason to question Joshua's emotional health immediately prior to the commencement of the father's three-week visitation period. With the child having been hospitalized for suicidal ideation when they first arrived in North Carolina, she called Sattenfield worried that he might need to be hospitalized again. Sattenfield confirmed that he heard these noises during this phone call and suggested that she bring Joshua to his office on an emergency basis. Despite the child's desire to go with his father on visitation, Sattenfield suggested that the three of them meet prior to such visitation period. The mother contended that she told this to the father when he arrived in North Carolina and that he refused to make any contact with the counselor. At that point, she canceled the visitation based upon Joshua's emotional needs. Having no alternative child care arrangements when she learned that the children's regular caretaker had no openings for the three weeks that they were scheduled to be out of town, she contended that she was unable to work and make the money that she needed to travel to New York.

In our view, this chain of events constituted a reasonable excuse for her default. Noting that "[w]e must remain vigilant that the ultimate issue * * * is what is in [the children's] best interest[s], not whether [the mother] should be punished for her actions" (*Matter of Swain v Vogt*, 206 AD2d 703, 706), we find that the lack of a full hearing to determine what would be in the best interests of these children must constitute a meritorious defense (*see, Matter of Waite v Whalen*, 215 AD2d 922; *see also*, CPLR 5015 [a] [1]).

Having concluded that the October 11, 1996 default order of custody should have been vacated, we next analyze whether the August 8, 1997 award of custody was proper. It is well settled that in any child custody case, the primary consideration must be the best interests of the children (*see, Matter of Farnham v Farnham*, 252 AD2d 675; *Matter of Gray v Jones*, 251 AD2d 765; *Matter of Donato v McLaughlin*, 249 AD2d 859) and, in making such determination, Family Court is bound to assess numerous factors (*see, Matter of Farnham v Farnham, supra*). With great deference accorded to Family Court's findings due to its unique ability to evaluate the testimony and assess the credibility of witnesses (*see, id.*, at 676; *see also, Eschbach v Eschbach*, 56 NY2d 167), such determination must remain undisturbed unless it "clearly lacks a sound and substantial basis in the record" (*Matter of Scalia v Scalia*, 217 AD2d 780, 781).

In so evaluating the determination here, we are mindful that the Court of Appeals has cautioned that "the separation of siblings * * * is to be frowned upon" (*Matter of Ebert v Ebert*, 38 NY2d 700, 704). However, as the evolution of such rule has been tempered by "the dynamics of family life * * * where the record indicates that the best interest of each child lies with a different parent" (*Matter of Copeland v Copeland*, 232 AD2d 822, 823, *lv denied* 89 NY2d 806; *see, Matter of Carpenter v La May*, 241 AD2d 625; *Matter of Bilodeau v Bilodeau*, 161 AD2d 906), we find no basis to disturb the determination rendered.

Family Court detailed the factual basis underlying its carefully considered determination of split custody. Extensive testimony demonstrated that the emotional difficulties suffered by these children stem from the bitterly hostile and abusive relationship between their parents. Without exception, it was opined that until the parents learn to work better with one another, the children's anxieties and inappropriate behavior will not cease. Witnesses testified that with respect to Joshua, his behavioral problems heightened both before he left for North Carolina and upon his return. The father acknowledged that he had difficulties with Joshua and had, at one point, considered surrendering his custody to the mother. To her credit, the mother recognized the need for professional intervention for Joshua whereas the father spurned any viable attempt. Although not determinative (*see, Matter of Copeland v Copeland*, *supra*), Joshua himself had a strong desire to reside with the mother. Jasmin's preschool teacher, on the other hand, testified to her loving relationship with her father, along with his involvement and commitment to her schooling.

Upon this record, we find a sound and substantial basis to support split custody since the determination further mandated family counseling, individualized counseling for Joshua and extensive sibling visitation. Having further reviewed and evaluated all remaining contentions as either without merit or moot as a result of the order entered August 8, 1997 (*see, Matter of Nicotera v Nicotera*, 222 AD2d 892), we hereby vacate the order of custody and visitation entered October 11, 1996 and affirm all remaining orders.

Mikoll, J. P., Yesawich Jr., Spain and Mugglin, JJ., concur. Ordered that the order entered October 11, 1996 is reversed, on the law and the facts, without costs, and order vacated. Ordered that the orders entered September 30, 1996 and August 8, 1997 are affirmed, without costs.