■ In the Matter of MICHAEL TAVERNIA, Respondent, v KATHALINA BOUVIA, Appellant. [785 NYS2d 187]—

Kane, J. Appeal from an order of the Family Court of Clinton County (Ryan, J.), entered November 12, 2002, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.

The parties are the parents of one child born in 1996. The child initially resided with respondent (hereinafter the mother), while petitioner (hereinafter the father), who lived out of state, saw him only sporadically. A court order provided the mother with sole custody and the father with visitation. After the father moved to the City of Plattsburgh, Clinton County, visitation increased. In January 2001, when the mother needed to leave her apartment, the father offered to allow the mother, the child and the mother's child from another relationship to move in with the father, his wife and their three children. The mother accepted that offer and lived there for two months, at which point she moved into an apartment around the corner which the father and his wife helped her find. A few days later, the father petitioned for custody. The parties resolved the matter by stipulating to an April 2001 consent order providing joint legal custody, primary physical custody to the mother and specific

visitation to the father. In March 2002, the father again petitioned for custody. After a hearing, Family Court granted the father's petition for sole custody, with visitation to the mother. The mother appeals.

"To warrant modification of an existing order of custody, [the father was] required to show a sufficient change in circumstances that demonstrates a real need for a change to ensure the continued best interests of the child" (*Matter of Gregio v Rifenburg*, 3 AD3d 830, 831 [2004] [citation omitted]; *see Matter of Engwer v Engwer*, 307 AD2d 504, 505 [2003]). While a child's mere poor performance in school is insufficient to qualify as a substantial change in circumstances (*see Matter of Wiltsey v Wiltsey*, 294 AD2d 638, 639 [2002]), such a change may be shown if the school performance is linked to the custody arrangement or one parent's interaction with the child (*see Matter of Cuozzo v Ryan*, 307 AD2d 414, 415 [2003]; *Matter of Crocker v Crocker*, 307 AD2d 402, 403 [2003], *lv denied* 100 NY2d 515 [2003]; *Matter of Robb v McIntosh*, 99 AD2d 571, 572 [1984]). A change may also be warranted where a custodial parent places his or her lifestyle choices ahead of the child's emotional well-being (*see Matter of Gregio v Rifenburg, supra* at 831-832; *Matter of Hudson v Hudson*, 279 AD2d 659, 660-661 [2001]). Based on Family Court's ability to observe the witnesses, its determination will not be disturbed if there is a sound and substantial basis in the record (*see Matter of Engwer v Engwer, supra* at 505). Finding such a basis in this record, we affirm.

Here, despite advice from a preventative services caseworker that any new relationship should be initiated slowly, about two weeks after meeting a man through the newspaper personal ads, the mother and her children began staying overnight with this boyfriend and his three teenage sons five or six nights per week. The mother testified that this arrangement bothered her in the beginning and that in hindsight it was not a good idea. The school personnel who testified noted that the child was exhausted and yet hyperactive, often could not focus, went to the nurse's office 34 times during the school year, sometimes cried at school unconsolably, was confused about where he was supposed to take the bus, did not know where his personal belongings were located and failed kindergarten. School personnel often had trouble reaching the mother, but the father or his wife always responded when called to pick up the child. On days after he spent the night with the father, the child was better rested and better able to focus in school. The child's regression and behavioral problems in school started soon after the mother began staying at her boyfriend's home with the child. The

mother admitted having trouble disciplining the child, a problem that apparently continued even after she participated in parenting classes. She acknowledged that the father disciplined well and she even called him once to come to her home and deal with the child's behavior. Several witnesses implied that the mother had difficulty following through on implementing strategies to improve her situation through better disciplinary measures, better money management or better interpersonal relationships, despite receiving instruction or advice regarding those matters. Although a prior award of custody is an important consideration in maintaining stability for the child (*see Friederwitzer v Friederwitzer,* 55 NY2d 89, 94 [1982]; *Matter of Hudson v Hudson, supra* at 660), the record supports Family Court's determination that the father could provide greater stability here. The mother's difficulty in addressing some of the child's needs, and her frequent change of residences—whether an official or de facto change—including the time spent at the boyfriend's home, are substantial changes which led to a lack of stability and had a negative impact on the child's educational and emotional well-being, necessitating a change of custody to advance the best interests of the child (*see Matter of Cuozzo v Ryan, supra* at 414-415; *Matter of Crocker v Crocker, supra* at 402).

Although siblings should be kept together if possible, that rule has become more complicated due to changing family dynamics (*see Matter of Donahue v Buisch,* 265 AD2d 601, 604 [1999]). The child here has five half-siblings. The mother gave birth to one child during the course of these proceedings, so no attachment had been established between that baby and the child. The mother's other child, the subject child's half-brother, had lived with the subject child for almost two years. On the other hand, an award of custody to the father would allow the subject child to live with the father's three children, the half-siblings closest to his age. Under these circumstances, as any determination would prevent the child from living with some of his half-siblings, Family Court's determination was reasonable.

Mercure, J.P., Spain, Carpinello and Lahtinen, JJ., concur. Ordered that the order is affirmed, without costs.