In the Matter of JOSEPH C. VALENTI, Appellant, v TAMMY L. VALENTI, Respondent. [869 NYS2d 266]—

Peters, J.P.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of three sons (born in 1993, 2000 and 2001). Pursuant to a February 2006 order based upon their stipulation, the parties shared joint legal custody of the children, with the mother having primary physical custody and the father having physical custody every weekend. In August 2006, the father, alleging certain changes in circumstances, commenced the instant proceeding seeking primary physical custody of all three children. Following a *Lincoln* hearing with the eldest child, Family Court issued a temporary order transferring primary physical custody of this child to the father and modifying the father's custodial time with all three children together to an alternating weekend basis. At the conclusion of the ensuing fact-finding hearing, the mother conceded that primary physical custody of the oldest child should be transferred to the father, but argued that it was in the best interests of the two younger children to remain with her. Family Court agreed, and the father appeals.

As a threshold matter, while Family Court properly found that the father demonstrated a sufficient change of circumstances by virtue of the mother's concession that it would be in the best interests of the oldest child for custody to be awarded to the father, thereby resulting in the separation of siblings, the court failed to properly set forth, in either its bench decision or written order, the ultimate facts it considered in reaching its determination that it was in the best interests of the two younger children for primary physical custody to remain with the mother (*see* Family Ct Act § 165; *Matter of Jose L.I.*, 46 NY2d 1024, 1025-1026 [1979]; *Matter of Guzzey v Titus*, 220 AD2d 976, 976 [1995], *lv denied* 87 NY2d 807 [1996]). Nevertheless, inasmuch as our authority in custody matters is as broad as that of Family Court (*see Matter of Louise E.S. v W. Stephen S.*, 64 NY2d 946, 947 [1985]; *Matter of Cree v Terrance*, 55 AD3d 964, 966 [2008]) and the record is sufficiently complete to allow us to make a custody determination, we will do so in the interest of judicial economy and to avoid further delay (*see Matter of Guzzey v Titus*, 220 AD2d at 976; *Guinan v Guinan*, 102 AD2d 963, 963 [1984]; *Matter of Milton v Dennis*, 96 AD2d 628, 628 [1983]). Upon our independent review, we conclude that Family Court's finding that it was in the best interests of the two younger children to remain in the mother's custody is not supported by a sound and substantial basis in the record.

"An existing custody arrangement may be modified upon a

showing that there has been a subsequent change of circumstances and modification is required to ensure the best interests of the children" (*Matter of Laware v Baldwin*, 42 AD3d 696, 696 [2007] [internal quotation marks and citations omitted]; *see Matter of Grant v Grant*, 47 AD3d 1027, 1028 [2008]). Factors relevant to determining the best interests of the children include maintaining stability in the children's life, the wishes of the children, the parties' fitness and ability to provide for the children's intellectual and emotional development, the willingness of each parent to foster a relationship with the other, each parent's past performance and the quality of the respective home environments (*see Matter of Robinson v Cleveland*, 42 AD3d 708, 709 [2007]; *Matter of Gravelding v Loper*, 42 AD3d 740, 742 [2007]). Further, while the parties' prior custodial arrangement is a consideration, it is entitled to less weight where, as here, it resulted from a stipulation rather than an order following a plenary hearing (*see Matter of Colwell v Parks*, 44 AD3d 1134, 1135 [2007]; *Matter of Spraker v Watts*, 41 AD3d 953, 954 [2007]).

Here, the evidence established that the mother's lifestyle has been chaotic and unstable. In the year and a half since the parties' separation, she has lived in three different locations, requiring that the children attend school in three different school districts. While initially living in an apartment in the Town of Clifton Park, Saratoga County, only a few miles from the former marital residence where the father resided and within the school district the children attended, the mother, without notice to the father, relocated approximately 45 minutes away to the Village of Corinth, Saratoga County. The living arrangements at the Corinth residence required all three children to share a single bedroom within a crowded household with numerous pets. While the mother testified that her change of residence outside of the children's school district was necessitated by her inability to afford the Clifton Park apartment, her assertions of financial distress were belied by the fact that she purchased a $700 pet dog during this same period of time, received rent from her roommate, cosigned a loan for a coworker's vehicle and was receiving child support from the father. During the pendency of the modification proceeding, the mother, without notice to the father, moved again, this time into an apartment with her paramour of eight months. Notably, notwithstanding her testimony that the paramour cares for the children while she is working, he neither testified nor was he evaluated. Further, the mother has held three different jobs since the parties' separation, having been fired from the first one due to her fraternization with

employees.* Interestingly, while Family Court found that transitioning the children again would not be in their best interests, it also specifically noted that the mother's income would be insufficient to allow her to stay in her current apartment without the financial assistance of her paramour.

Moreover, the record reveals conduct by the mother evincing her willingness to place her own needs ahead of the well-being of her children, two of whom have special needs (see Matter of Gregio v Rifenburg, 3 AD3d 830, 831-832 [2004]; Matter of Hudson v Hudson, 279 AD2d 659, 661 [2001]). Although the youngest child had been receiving speech therapy twice a week at the mother's apartment in Clifton Park, the mother failed to notify the therapist of her relocation, causing the therapist to ultimately contact the father to find out why no one was home after her repeated attempts to provide these services. Additionally, the mother relocated to a different school district despite the fact that the oldest child was facing the possibility of failing seventh grade unless he attended summer school, requiring the father to intervene and work with the school to ensure that the child received the assistance he needed to pass. The evidence also established that the mother did not attend school meetings for the younger siblings and she failed to respond to letters from the children's teachers, resulting in the children being unprepared for school and requiring the father to intervene.

There was also extensive evidence presented concerning the mother's poor parental judgment. A number of witnesses testified that the mother supplied alcohol to minors and engaged in illegal drug use. As noted previously, the mother was terminated from her employment for fraternizing with employees. One employee was a 17-year-old boy with whom she had a sexual relationship. This young man testified in detail as to the mother's pursuit of him, stating that the mother obtained a fake indentification for him, brought him to bars where they consumed alcohol, occasionally paid his cell phone bill, and cosigned a loan to finance his vehicle. He further testified that, shortly after the father left the marital residence, the mother invited him to the home and plied him with alcohol until he acquiesced to engaging in sexual intercourse. He also stated that he and the mother engaged in sexual activity a number of times and that he slept in the mother's bed on more than one occasion, once when the children were in the apartment. Although the mother denied all such allegations except the cosign-

---

* Notably, each change of employment failed to improve the mother's financial condition, and she now earns significantly less than she did in her two previous employments.

ing of a loan, Family Court specifically credited the boy's testimony as to the social and sexual relationship between the two. Shockingly, however, the court found this conduct by the mother to be insignificant to its determination as to the best interests of the children. While we are mindful that a parent's sexual indiscretions or relationships should be a consideration in a custody dispute only if it can be shown that such factor may adversely affect the children's welfare (*see Matter of Scalia v Scalia*, 217 AD2d 780, 782 [1995]; *Pawelski v Buchholtz*, 91 AD2d 1200, 1200 [1983]), we believe that the mother's conduct here is strikingly relevant to her parental judgment and ability to provide appropriate parental guidance to her three sons.

In contrast to the mother, the father has been steadily employed for the past 16 years and continues to reside in the spacious, seven-bedroom marital residence where each child has his own room. The father's sister permanently resides at the father's home, providing assistance to him in raising the children. The father encourages a strong family bond, hosting weekly gatherings for extended family members to spend quality time together, is involved in the children's education and has been proactive and attentive with respect to the children's educational needs, physical care and emotional development. While the father is not without shortcomings, we find them to be relatively insignificant when measured against those of the mother.

Family Court's determination also separated the oldest child from his siblings, a situation "frowned upon" by our courts (*Matter of Donahue v Buisch*, 265 AD2d 601, 604 [1999], quoting *Matter of Ebert v Ebert*, 38 NY2d 700, 704 [1976]). Indeed, the general rule is that it is in the children's best interests to be kept together absent an overwhelming need to do otherwise (*see Eschbach v Eschbach*, 56 NY2d 167, 173 [1982]; *Matter of Ebert v Ebert*, 38 NY2d at 704; *Obey v Degling*, 37 NY2d 768, 771 [1975]). Although this rule may be overcome where the record reveals that "the best interest of each child lies with a different parent" (*Matter of Copeland v Copeland*, 232 AD2d 822, 823 [1996], *lv denied* 89 NY2d 806 [1997]; *see Matter of Jelenic v Jelenic*, 262 AD2d 676, 677 [1999]), we find no basis in the record to support this conclusion. To the contrary, not only did the father provide compelling evidence for custody of all three children, but the Law Guardian also advocated that the two younger siblings be placed with the father and that keeping the siblings together would serve the children's best interests (*see Matter of Gutiy v Gutiy*, 40 AD3d 1155, 1156 [2007]; *Matter of Jelenic v Jelenic*, 262 AD2d at 677).

Further, as indicated by the Law Guardian, the oldest sibling expressed his desire to live with his younger brothers, indicated that his siblings repeatedly asked to live with the father, and felt "very strongly" that they should reside with the father (*compare Matter of Delafrange v Delafrange*, 24 AD3d 1044, 1046 [2005], *lv denied* 8 NY3d 809 [2007]). The children's preference in this regard is "some indication 'of what is in [their] best interests' " (*Matter of Oddy v Oddy*, 296 AD2d 616, 617 [2002], quoting *Eschbach v Eschbach*, 56 NY2d at 173). The evidence also demonstrated that the oldest child and the two younger siblings enjoy a playful, loving and healthy comradery. Based on all of the foregoing, we conclude that Family Court's determination was without adequate record support and hold that it is in the best interests of the two younger children for primary physical custody to be placed with the father. Because we are troubled by the cavalier manner in which Family Court conducted this proceeding, we require that further matters concerning these parties be heard by a different judge (*see Matter of Cornell v Cornell*, 8 AD3d 718, 720 [2004]).

Rose, Lahtinen, Kane and Malone Jr., JJ., concur. Ordered that the order is modified, on the law and the facts, without costs, by reversing so much thereof as partially dismissed petitioner's application; petition granted in its entirety, petitioner awarded primary physical custody of the parties' children, and matter remitted to the Family Court of Saratoga County for further proceedings not inconsistent with this Court's decision before a different judge; and, as so modified, affirmed.