■ In the Matter of DAVID P. ESTERLE, Respondent, v HEATHER M. DELLAY, Appellant. [721 NYS2d 695] —Lahtinen, J. Appeals (1) from an order of the Family Court of Ulster County (Mizel, J.), entered January 4, 2000, which granted petitioner's application, in a proceeding pursuant to Family Court Act article 6, for custody of the parties' child, and (2) from an order of said court, entered April 20, 2000, which denied respondent's motion for reconsideration.

Petitioner and respondent, who were never married, are the parents of a daughter born in July 1993. Respondent, a resident of Ulster County, never informed petitioner, a resident of Kentucky, of her pregnancy or of the birth of the child. Petitioner was informed of the birth of the child in September

1993 by a relative of respondent and contacted respondent but was met with hostility. A paternity proceeding was commenced by or on behalf of petitioner in November 1994 and in July 1995, after genetic testing established petitioner's paternity, he repeatedly contacted respondent seeking to become a part of the child's life. Respondent told him she had no intention of permitting him to see the child, that she did not want the child to have a father and that she only wanted child support. An order of paternity was entered in October 1995 and petitioner commenced paying child support, a percentage of the child's uncovered medical expenses and provided health insurance coverage for the child. He continued to contact respondent attempting to establish a relationship with the child, including an unsuccessful trip to Ulster County in July 1995 for that purpose.

After his attempts to see the child were consistently rebuffed by respondent, petitioner filed a petition in 1996 seeking custody. He met his daughter for the first time in July 1996 after a court appearance in Ulster County and, with respondent's consent, took the child to Kentucky for a two-week visit in August 1996. At a court appearance in November 1996, the parties resolved that custody proceeding by a consent order which granted respondent sole custody, granted petitioner visitation for eight weeks of the summer and at alternate school recesses, directed respondent to consult with petitioner regarding the child's health and education, and allowed petitioner access to the child's medical and school records.

In January 1998 petitioner commenced the instant proceeding alleging that respondent violated the consent order by refusing to consult with him regarding the child's health and education and that circumstances had changed as respondent was neglecting the child's medical and dental needs. At the custody hearing which concluded in January 1999, both parties testified and presented other evidence. The court-appointed psychologist also testified and rendered an opinion that the child's best interest would be served by granting custody to petitioner. On August 13, 1999 Family Court issued a memorandum decision granting petitioner custody of the child. On December 7, 1999 the court handed down a comprehensive decision setting forth detailed reasons for its custody determination and granting respondent specific periods of visitation. Respondent filed a notice of appeal from the resulting order.

In February 2000 respondent moved to renew and reargue the custody order based on information that the court-appointed psychologist had professional disciplinary proceed-

ings pending against him at the time he interviewed respondent for the custody proceeding and, for the first time, claimed the psychologist had prejudged her case. Family Court denied the motion on the merits and respondent also appeals from that order.

On appeal, respondent claims that the report and testimony of the court-appointed psychologist was so tainted that a new hearing is required, that she was denied a fair and impartial hearing resulting in an order which denied her "fundamental liberty interest" as a custodial parent and that Family Court's decision was not in the best interest of the child.

Turning first to respondent's appeal from the denial of her motion to renew or reargue, we note that Family Court properly treated the application as one to set aside a decision after trial (see, CPLR 4404 [b]). Family Court denied respondent's application, finding that the psychologist's alleged unfairness towards her occurred during her pretrial sessions with him, was therefore known to her at the time of the hearing and thus was not "new evidence." Additionally, respondent's complaint of the psychologist's alleged bias towards her was not explored on his cross-examination and she failed to show how an evaluation by another psychologist would have resulted in a different decision (see, e.g., S.A.B. Enters. v Stewart's Ice Cream Co., 242 AD2d 845, lv dismissed 91 NY2d 848). Family Court further found that proof of disciplinary proceedings against the psychologist and his alleged bias towards her only served to impeach his credibility and did not constitute new evidence which would warrant a new hearing (see, Texido v S & R Car Rentals Toronto, 244 AD2d 949, lv dismissed and denied 91 NY2d 938). We find no abuse of discretion in Family Court's decision denying respondent's motion, a decision which is fully supported by the record (see, Di Bernardo v Gunneson, 65 AD2d 828).

With respect to respondent's appeal from Family Court's order granting custody of the child to petitioner, we find no merit to her claim that she was denied a fair and impartial hearing which resulted in that order, the effect of which was to "banish" the child to Kentucky, depriving her of the "fundamental liberty interest" of a custodial parent, contrary to the policy encouraging a strong relationship between a child and both parents (see, Weiss v Weiss, 52 NY2d 170). Respondent provides no authority for such a claim nor did she seek to modify the visitation schedule fashioned by Family Court which she contends deprives her of contact with the child for extended periods of time. Further, her conclusory allegation that she

was denied a fair and impartial hearing is belied by the proof and by Family Court's thorough and thoughtful decision.

Respondent also argues that Family Court erred in its finding that it would be in the best interest of the child to be placed in the custody of petitioner. We disagree. Petitioner sought modification of an existing custody arrangement, requiring " 'a showing of sufficient change in circumstances reflecting a real need for change in order to insure the continued best interest of the child' " (*Matter of Markey v Bederian*, 274 AD2d 816, 817, quoting *Matter of Van Hoesen v Van Hoesen*, 186 AD2d 903; *see*, *Matter of Hrusovsky v Benjamin*, 274 AD2d 674, 675). Such a custody determination must focus on the child's best interest (*see*, *Eschbach v Eschbach*, 56 NY2d 167, 171) and requires consideration of a number of factors, including the quality of the parents' respective home environments, the length of time of the custodial arrangement sought to be modified, each parent's past performance and relative fitness, and their ability to guide and provide for the child's intellectual and emotional development (*see*, *Matter of Hrusovsky v Benjamin*, *supra*, at 675; *Matter of De Losh v De Losh*, 235 AD2d 851, 852, *lv denied* 89 NY2d 813; *Matter of Alice A. v Joshua B.*, 232 AD2d 777). In this case, Family Court's assessment of those factors, which resulted in its determination that there had been a change in circumstances and that the child's "best interests would be substantially enhanced by the transfer of custody" (*Matter of Russo v Russo*, 257 AD2d 926, 927) to petitioner, has a sound and substantial basis in the record and should not be disturbed (*see*, *Matter of Breitung v Trask*, 279 AD2d 677).

From the child's birth, respondent undertook a course of conduct which Family Court described as a concerted effort to eliminate petitioner from the child's life. The record clearly demonstrates that respondent wanted petitioner to have no participation in the child's upbringing, starting with her failure to disclose her pregnancy or the birth of the child, continuing with her refusal to provide him with a picture or allow him telephone or other contact with the child, her refusal of petitioner's offer of assistance with the child and her refusal to disclose to petitioner details regarding the child's health and education, even in the face of a court order directing her to do so. Respondent's testimony that she now realizes that petitioner should have a role in the child's life is belied by her actions during the course of this proceeding, including telling the child that petitioner was trying to take her from her mother and her behavior surrounding the birth of her second child, born dur-

ing this proceeding, wherein she did not disclose the pregnancy to the father of the child, her own father with whom she testified she was very close, her best friend who often babysat for her, or her child protective services caseworker who had been providing services to respondent since December 1997. On the other hand, the record reflects that petitioner encouraged the child to contact her mother during the summer visitation with him and even brought the child to see her maternal grandmother who lived in Ohio. As the fostering of a relationship with the noncustodial parent is an important consideration in a custody determination (*see, e.g., Matter of Huff v Keely*, 249 AD2d 844, 845), respondent's conduct in this regard does not favor an award of custody to her.

Additionally, Family Court's determination that respondent significantly abdicated her parental responsibilities by neglecting the child's dental health over a long period of time despite constant efforts by petitioner and respondent's father to address this serious health issue was amply supported by the record. While in respondent's care, several of the child's front teeth became so decayed and infected that she could not eat without pain and her health was endangered. Respondent indicated that she did not notice the decay on the child's teeth, which petitioner did notice and attempted to discuss with respondent after his first visit with the child in August 1996. Respondent then admittedly lied to petitioner about taking the child to see a dentist and obtaining antibiotics for the problem when she had not done so.

Further medical neglect of the child by respondent was evidenced by the fact that, from August 1993 to January 1998, the child was never taken to a physician for a checkup nor did she receive any childhood immunizations. Minimal medical care took place only after child protective services became involved with respondent because of reports to the State Central Registry regarding respondent's medical and dental neglect of the child which were eventually "indicated." Respondent also professed not to notice that the child had constant painful urinary tract infections which went untreated. The record reflects that respondent was "seriously deficient in taking care of [the child's] medical needs" (*Matter of Russo v Russo, supra*, at 928), lacked the ability to recognize and deal with the child's health issues (*see, Matter of Brewer v Whitney*, 245 AD2d 842, 843) and engaged in a "pattern of immature decision making and the exercise of poor judgment" (*Matter of Markey v Bederian, supra*, at 818).

Respondent was also seriously deficient in providing for the

intellectual and emotional development of the child, keeping her in diapers and permitting her to drink from a baby bottle (which usually contained soda or iced tea) well beyond her infancy. Petitioner's successful efforts to toilet train the child and to introduce her to a "child cup" filled with milk or juice during his visitation periods were undermined by respondent who did not follow through and would return the child with diapers and a baby bottle for the next visit. Respondent's lack of proper care for the child demonstrated, in Family Court's words, her "potentially catastrophic failure to understand the obligations of parenthood" and provided a sound and substantial basis for that court's determination to change custody to petitioner.

Respondent's argument that petitioner belatedly came into his daughter's life and only sought dental and medical treatment for her to bolster his application for custody is not supported by the evidence. The record is replete with his efforts to prod respondent to address the child's dental health needs prior to filing this petition for custody, including offers of financial assistance and constant inquiry of respondent regarding the specifics of the child's alleged dental care. Nor do we credit respondent's claim that petitioner failed to obtain needed dental and medical care while the child was visiting him in Kentucky. Petitioner testified that he did not provide dental care during his summer visitation periods because he did not believe that he could legally authorize such treatment for the child. The emergency dental care he obtained for the child while she was with him, a dental examination, diagnosis and course of antibiotic treatment, was an appropriate noncustodial parental response to her ongoing and unaddressed dental problems.

Respondent also claims that the transfer of custody to petitioner will result in the separation of the child from her younger sister, pointing to the general reluctance of courts to separate siblings (*see, e.g., Ebert v Ebert,* 38 NY2d 700, 704). As this Court has found, this rule is not absolute and should not be applied where the record indicates that the best interest of each child is with a different parent (*see, Matter of Copeland v Copeland,* 232 AD2d 822, 823, *lv denied* 89 NY2d 806). Family Court correctly found that the best interest of respondent's second child, who had a different father, was not before it and that, based on this record, it would be in the best interest of the child involved in this proceeding to be in the custody of petitioner.

Finally, we acknowledge that the visitation accorded respon-

dent in Family Court's order results in respondent not having visitation with the child for a 10-month period every other year, which we believe was unintended. However, we are reluctant to attempt to adjust the visitation schedule on this record, which lacks sufficient information regarding the many factors that should be considered such as travel time, travel costs, the financial situations of the parties and the ability of the child to travel on public transportation in order to fashion an equitable visitation schedule. Further, it appears that the parties were able to reach agreement on this issue in the past and would be in the best position to do so now. We shall therefore remit this proceeding to Family Court to adjust respondent's visitation schedule, noting that we do not disagree with the amount of visitation but that our paramount concern is that the length of time between respondent's periods of visitation should be kept to a minimum.

Mercure, J. P., Spain, Carpinello and Rose, JJ., concur. Ordered that the order entered January 4, 2000 is modified, on the law and the facts, without costs, by reversing so much thereof as relates to the child's visitation schedule for the winter and spring school recesses; matter remitted to the Family Court of Ulster County for further proceedings not inconsistent with this Court's decision; and, as so modified, affirmed. Ordered that the order entered April 20, 2000 is affirmed, without costs.