■ In the Matter of MELVIN W. LUKE, Respondent, v HEIDI L. LUKE, Appellant. (And 12 Other Related Proceedings.) [933 NYS2d 782]—

McCarthy, J.

Petitioner (hereinafter the father) and respondent (hereinafter the mother) are the parents of one child (born in 2001). The parties are still married, but separated prior to the child's birth. In 2003, after a DNA test established the father's paternity, the parties agreed to a stipulated order of joint custody, physical custody to the mother and visitation with the father on alternate weekends. These visits apparently only occurred for one or two months. Also in 2003, a support order was entered against the father. The father then moved to New Jersey. Each party claims that he or she lacked contact information for the other after 2003. In 2004, Family Court issued a default order awarding the mother sole custody, with visitation to the father as agreed upon by the mother.[1]

In 2007, the father returned to Schuyler County. That same year, the mother apparently moved to New Jersey and then Pennsylvania. In 2009, the father sought Family Court's assistance to locate the mother and filed a petition seeking visitation with the parties' daughter. In October 2009, after these proceedings had commenced, the mother moved back to Schuyler County, but within a few months she moved to Steuben County. The father filed numerous petitions seeking visitation, custody and downward modification of support, and alleging that the mother violated the prior visitation order as well as temporary orders entered during these proceedings. Following a hearing on these and other petitions,[2] Family Court awarded the parties joint custody with the child spending four days per week with the father and three days per week with the mother. The court also terminated the father's support obligation effective January 2010, the date he filed his support modification petition. The mother appeals.

Family Court's modification of custody has a sound and substantial basis in the record. The parties' numerous moves, the father trying to reestablish contact and the mother hindering those efforts all provide changed circumstances reflecting a need to modify the prior custody and visitation order. Although the father did not actively attempt to enforce his visitation rights and pursue his relationship with his daughter from 2003 to 2009, he testified that he had no vehicle in New Jersey, had no contact information for the mother or child and did not know how to find them. The mother stopped bringing the child to visitation after one or two months in 2003 and—despite having

---

1. The father asserts that he was never notified of this proceeding or the ensuing order.

2. Other individuals who are not biologically related to the parties' daughter also sought custody of her and her half brother.

agreed to the visitation—filed unsubstantiated petitions to terminate the visitation soon after entering the stipulation. The mother moved numerous times, including four times during the pendency of these proceedings, and never informed the father. Some of her residences were crowded or unsuitable for children (*see Matter of Valenti v Valenti*, 57 AD3d 1131, 1133 [2008], *lv denied* 12 NY3d 703 [2009]). One was a safe house where she fled to escape domestic abuse by her paramour—abuse that was witnessed by the daughter and caused her to fear the paramour. The mother also violated almost every temporary visitation order entered during the pendency of these proceedings by failing to bring the child to visit with the father. When she did not have a suitable place to live, she wrote a letter assigning custody of her daughter and son to her paramour's adult daughter, without consulting the father. The paramour's daughter also deprived the father of his court-ordered visitation, and the mother passed blame to her. At the time of the *Lincoln* hearing, the child had not seen her mother for almost two months, and the mother testified that she called only when she had minutes on her phone. Despite this constantly changing situation, the mother denied that she made any poor choices that caused instability in the child's life.

While the father had lost contact with his daughter for several years and did not adequately explain why he took so long to attempt to reestablish a connection, at the time of the hearing he had been working for a year to form a relationship with her. Those efforts were constantly thwarted by the mother and her paramour's daughter, who failed to bring the child to visits and even kept the child out of school on Fridays when the father was supposed to pick the child up for weekend visitation. Everyone agreed that the child should remain in the same school district; the father lived near the child's school, while the mother had moved to a different district. The father also agreed to open a preventative services file with the local social services agency and bring the child to mental health counseling.

Courts should consider the child's wishes as one factor in the best interests analysis, but those wishes are not determinative (*see Dintruff v McGreevy*, 34 NY2d 887, 888 [1974]; *Matter of Meier v Meier*, 79 AD3d 1295, 1296 [2010]). The child indicated that she did not like visiting her father, but her only reason was because there were no other children there for her to play with. Other record information indicates that, despite some initial hesitation or pre-visit agitation, the child did well on the visits. Family Court did not err in placing the child with the father for four days per week.

While the law expresses a preference for keeping siblings together, the rule is not absolute and has become complicated by changing family dynamics and the presence of multiple half siblings;[3] the court must ultimately decide what is best for the child at issue (*see Matter of Williams v Williams*, 66 AD3d 1149, 1152 [2009]; *Matter of Tavernia v Bouvia*, 12 AD3d 960, 962 [2004]; *Matter of Esterle v Dellay*, 281 AD2d 722, 727 [2001]). Here, the custody petitions regarding the mother's son—the half brother of the daughter involved in this appeal—were withdrawn or dismissed, leaving that child in the mother's custody. Evidence indicated that the son would have difficulty being separated from his half sister, but there was no evidence of ill effects to the daughter from any separation. In any event, Family Court's order left those children together for three days each week.[4] Considering the totality of the circumstances, including the custodial interference by the mother, the record contains a sound and substantial basis for the court's custody determination (*see Matter of Dobies v Brefka*, 83 AD3d 1148, 1151 [2011]).

Family Court did not abuse its discretion by terminating the father's child support obligation. The court was authorized to suspend support payments for periods when the mother wrongfully interfered with or withheld visitation (*see* Domestic Relations Law § 241; *Matter of Dobies v Brefka*, 83 AD3d at 1152). The record supports the finding that the mother deliberately and unjustifiably frustrated the father's visitation by failing to produce the child, moving without notifying the father and attempting to informally transfer custody to another person who also did not produce the child for visitation—again without informing the father. Additionally, the court's custody determination placed the child in the father's care for the majority of each week, providing a basis to eliminate his support obligation. Hence, the court did not err in terminating the father's support obligation as of January 2010, the date he filed a petition seeking such relief (*see Matter of Alexander v Alexander*, 129 AD2d 882, 884 [1987]). Although the mother contends that the order is unclear as to the father's liability for support arrears, the order does not mention arrears, thus leaving arrears for any period prior to January 2010 intact.

---

**3.** The mother's son is the child of her paramour, making the paramour's adult daughter—with whom the mother placed her son and the parties' daughter—the son's half sister.

**4.** Rather than placing the daughter with her mother, the order actually provided that the daughter be with her half brother for three days per week. Thus, if the mother continued to leave her son with her paramour's daughter, the parties' daughter would spend three days with her half brother in that woman's care.

Peters, J.P., Lahtinen, Stein and Garry, JJ., concur. Ordered that the order is affirmed, without costs.