■ JEANNEMARIE O., Appellant, v RICHARD P., Respondent. [943 NYS2d 246]—

Garry, J. Appeal from an order of the Supreme Court (Zwack, J.), entered March 11, 2011 in Ulster County, which, among other things, granted defendant's motion for an award of custody of the parties' children.

Plaintiff (hereinafter the mother) and defendant (hereinafter the father) were married in 2005 and are the parents of two children (born in 2006 and 2008). The parties resided in Ulster County during their marriage. In January 2009, the mother relocated with the children to Suffolk County, where she commenced family offense proceedings—ultimately dismissed—and a divorce action. The father's custody petition in Ulster County was dismissed due to the pending Suffolk County divorce action; thereafter, he commenced a habeas corpus proceeding in Suffolk County, which the parties resolved by a stipulated temporary parenting schedule. Venue for the divorce action was subsequently transferred to Ulster County. The father moved for temporary custody and the mother cross-moved for, among other things, temporary custody and child support. The parties thereafter agreed to accept the court's decision on their cross motions as a final custody determination. After a hearing, Supreme Court awarded sole custody to the father and ordered the mother to pay child support, without making any direction as to retroactive support. The mother appeals.

"An initial child custody determination is [to be based on] the best interests of the child, taking into consideration such factors as the parents' ability to provide a stable home environment for the child, the child's wishes, the parents' past performance, relative fitness, ability to guide and provide for the child's overall well-being, and the willingness of each parent to foster a relationship with the other parent" (*Matter of Rundall v Rundall*, 86 AD3d 700, 701 [2011] [citations omitted]; *see*

---

*Matter of Melissa K. v Brian K.*, 72 AD3d 1129, 1131 [2010]). Initially, the record fully supports Supreme Court's determination that joint custody was not feasible due to the parties' mutual animosity and inability to communicate as to matters affecting the children (*see Matter of Henderson v MacCarrick*, 74 AD3d 1437, 1440 [2010]; *Matter of Martin v Martin*, 45 AD3d 1244, 1245-1246 [2007]). According the requisite great deference to the court's credibility assessments, we further find a sound and substantial basis in the record supporting the decision to grant custody to the father (*see Moor v Moor*, 75 AD3d 675, 676-677 [2010]).

After a hearing, which included the testimony of the parties and several experts, Supreme Court performed a detailed analysis of the relevant factors and found that the father and mother were both fit, loving parents, each demonstrating significant strengths and weaknesses. In particular, the court noted that the father had exhibited occasional poor judgment in such serious matters as maintaining unsecured guns in the home, and the mother had taken a more proactive role in raising the children, had acted as their primary caregiver before the parties' separation and was better aware of their needs. However, the court found that the mother's positive attributes were outweighed by her "cumulative efforts" after the separation to interfere with the father's relationship with the children and prevent him from having a meaningful role in their lives and by her "willingness . . . to deceive in order to achieve her goal of parenting the children without the [father's] involvement."

The record supports these conclusions, revealing that, among other things, the mother unilaterally moved the children several hours away from the father, sought multiple orders of protection against the father—all of which were ultimately dismissed—cancelled agreed-upon visitation arrangements, and made negative allegations against the father as to, among other things, substance abuse and violence that were unsubstantiated. With regard to the mother's most serious claim against the father—that is, that he sexually abused one of the children—Supreme Court found that the child's statements had likely resulted from the methods the child's counselor used to elicit them or from manipulation by the mother, who had, in the court's view, engaged in "inappropriate coaching of the children" to support her goal of alienating them from the father.* As to the mother's claim that she relocated to Suffolk County because she feared for her safety, we defer to Supreme Court's

_____

* Notably, the child's statements to a counselor were not otherwise corroborated, and the attorney for the child contended that the statements were

credibility assessment that this "[was] simply not true," and that the mother's true goal in relocating was to minimize the father's parenting time with the children and obtain a tactical advantage in the divorce action. In reaching this conclusion, the court gave "substantial weight" to the testimony of a clinical psychologist called by the attorney for the children who, following a forensic evaluation of both parties, opined that the mother believed that the children did not require significant involvement with the father in order to be happy and well-adjusted. This expert further opined that the mother did not relocate to Suffolk County because of domestic violence or to seek family support as she claimed, but to put geographical distance between the father and the children so that she could parent them as she deemed appropriate without his involvement.

"Evidence that the custodial parent intentionally interfered with the noncustodial parent's relationship with the child is so inconsistent with the best interests of the child as to, per se, raise a strong probability that the offending party is unfit to act as custodial parent" (*Matter of Youngok Lim v Sangbom Lyi*, 299 AD2d 763, 764 [2002] [internal quotation marks, brackets and citations omitted]). Here, the record supports Supreme Court's conclusions that the mother placed her own self-interest ahead of that of the children and lacked insight into the importance of the children's relationship with the father and the detrimental impact of her actions upon them, while the father showed greater willingness to foster a relationship between the children and the mother and to improve his parenting skills. We find no reason to disturb the determination that the father is more fit to act as the custodial parent (*see Matter of Keefe v Adam*, 85 AD3d 1225, 1226-1227 [2011]; *Matter of Dobies v Brefka*, 83 AD3d 1148, 1151 [2011]; *Posporelis v Posporelis*, 41 AD3d 986, 990-991 [2007]).

Supreme Court made a limited ruling relative to child support. The mother first applied for temporary child support in April 2009, several months after relocating to Suffolk County; in August 2009, the father argued in opposition that she had improperly used self-help in assuming custody and that no child support determination should be made pending resolution of the custody issue. Upon awarding custody to the father in March 2011, the court directed the mother to pay prospective child support, but failed to address the issue of retroactive support. Upon review, we are unable to discern whether the mother's conduct effectively frustrated the father's visitation

coached. The claims were determined to be "unfounded" following a child protective investigation.

rights and, if so, for what periods of time (*compare Matter of Luke v Luke*, 90 AD3d 1179, 1182 [2011]; *Matter of Dobies v Brefka*, 83 AD3d at 1152; *Ledgin v Ledgin*, 36 AD3d 669, 670 [2007]; *see also* Scheinkman, Practice Commentaries, McKinney's Cons Laws of NY, Book 14, Domestic Relations Law § 241, at 22-23). Thus, the issue of retroactive support to the mother must be remitted.

Mercure, J.P., Spain and Egan Jr., JJ., concur. Ordered that the order is affirmed, without costs, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision.