Stein, J.
Appeal from an order of the Family Court of Ulster County (Feeney, J.H.O.), entered November 27, 2012, which granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 6, to modify a prior order of custody.
Petitioner (hereinafter the mother) and respondent (hereinafter the father) are the unmarried parents of a daughter (born in 2008). Pursuant to a June 2009 consent order, as amended in July 2010, the parties shared joint legal custody, with the mother having primary physical custody and the father having scheduled parenting time, including three weeks in the summer. Following a November 2010 incident in which the father attempted suicide in the presence of the mother and the child, the father relocated to Georgia, where he was hospitalized for a period of time and was ultimately diagnosed with schizophrenia. In April *1053 2012, when the father sought to exercise his summer visitation in Georgia, the mother commenced the instant proceeding seeking sole legal custody of the child and to limit the father to supervised visitation. After a hearing, Family Court found a change in circumstances sufficient to warrant modification of the prior custody order, awarded the mother sole legal and physical custody, and directed that the father’s visitation with the child occur within New York and be supervised by Crystal DePew (the mother of the father’s other child)[1] and that each party notify the other with respect to the child’s illnesses and/or serious medical issues. The father now appeals.
Initially, we reject the father’s argument that the Judicial Hearing Officer (hereinafter JHO) who presided over the proceeding lacked subject matter jurisdiction. While the record before us does not include an order of reference designating the JHO (see CPLR 4311, 4317 [a]; 22 NYCRR 122.6), or a written stipulation of the parties, the parties expressly consented on the record to having the JHO preside over the case and “there is nothing in the record indicating that the JHO was not lawfully assigned to their proceedingt ]” (Matter of McDonald v Reed, 68 AD3d 1181, 1181 [2009], lv dismissed 14 NY3d 758 [2010]; see Yuen v Kwan Kam Cheng, 69 AD3d 536, 537 [2010]; compare Binh Nguyen v Prime Residential Bronx R&R V LLC, 307 AD2d 201, 201-202 [2003]; Fernald v Vinci, 302 AD2d 354, 355 [2003]).[2]
Turning to the merits of Family Court’s order, the father does not dispute that there has been a change in circumstances such that a modification of the existing custody order is necessary to further the child’s best interests (see Matter of Breitenstein v Stone, 112 AD3d 1157, 1157-1158 [2013]; Matter of Casarotti v Casarotti, 107 AD3d 1336, 1337 [2013], lv denied 22 NY3d 852 [2013]; Matter of Melody M. v Robert M., 103 AD3d 932, 933 [2013], lv denied 21 NY3d 859 [2013]). Indeed, the manifestation of the father’s psychological issues, his move to Georgia and his diagnosis of schizophrenia all establish a change in circumstances that rendered the existing custody order unworkable. As a result, Family Court properly conducted the requisite best interests analysis (see Eschbach v Eschbach, 56 NY2d 167, 171 [1982]; Matter of Flood v Flood, 63 AD3d 1197, 1198 [2009]). In this regard, we agree with the father that Family Court should not have applied a negative inference based upon the *1054 father’s failure to call his treating psychiatrist as a witness at the hearing, in the absence of any evidence that such witness was within the father’s control (see generally Matter of Adam K., 110 AD3d 168, 176-185 [2013]; Matter of Richard E., 12 AD3d 1019, 1021 [2004]). However, inasmuch as there was otherwise sufficient evidence adduced at the hearing to support the modification imposed by Family Court, we find the impact of the inference to be harmless.
The mother testified in great detail about the November 2010 incident, including the father’s attempts to stab himself, to spray chemicals in his mouth and to hang himself.[3] According to the mother, the child was present in the home, observed the father’s actions and was screaming and crying. Since this incident, the father has seen the child only three times, all in the presence of other adults. The mother additionally agreed to allow the father and the paternal grandmother to take the child to Pennsylvania for a family event, upon the grandmother’s assurance that she would be responsible for the child’s care. Although the grandmother testified that she did not leave the child alone with the father, the mother was convinced — based upon the father’s assertions — that this was not true. The mother also testified that the father had a long history of alcohol abuse which, in combination with his mental health issues, raised concerns for the child’s safety if the child was left alone with him. Finally, the mother testified that she does not believe that she and the father are capable of cooperating for the purpose of continuing joint legal custody because she does not feel comfortable speaking to the father about issues concerning the child due, in part, to him having threatened her as a result of her attempt to modify his visitation rights.
The father denied that he had attempted suicide, but testified that he moved to his mother’s home in Georgia because he was ill and acknowledged that he was hospitalized on multiple occasions and was ultimately diagnosed with schizophrenia. According to his medical records, the father was prescribed medication and was enrolled in an outpatient treatment program five days a week. While the father also denied that he had an alcohol problem, he admitted that he started drinking at a young age and that he was suffering from alcohol poisoning at the time he was admitted to the outpatient treatment program. Additionally, there is evidence in the record that he has consumed alcoholic beverages since that time.
Despite evidence of some improvement in the father’s condi *1055 tion and witness testimony that he provided appropriate care for the child both before and after the November 2010 incident, Family Court was justifiably concerned about the status of the father’s mental health, particularly in view of his failure to acknowledge or address his alcohol problem and the absence of any evidence indicating that he has achieved a sufficient level of stability to render unsupervised visits appropriate. Family Court recognized the importance of the child’s relationship with her father, but also considered the child’s young age, the substantial distance between the child’s residence and that of the father, and the fact that the mother has been the child’s primary caretaker since the child’s birth.
Considering the record as a whole, and according deference to Family Court’s credibility assessments (see Matter of Breitenstein v Stone, 112 AD3d at 1158), we find a sound and substantial basis in the record for that court’s determination that the best interests of the child are served by an award of sole legal custody to the mother (see Matter of Melody M. v Robert M., 103 AD3d at 933; Matter of Fish v Fish, 100 AD3d 1049, 1050 [2012]) with supervised visitation to the father (see Matter of Burrell v Burrell, 101 AD3d 1193, 1194 [2012]; Matter of Knight v Knight, 92 AD3d 1090, 1092-1093 [2012]; Matter of Beard v Bailor, 84 AD3d 1429, 1430 [2011]). Moreover, we discern no basis to disturb Family Court’s direction that the father’s visitation occur within New York or that court’s choice of supervisor (see Matter of D’Angelo v Lopez, 94 AD3d 1261, 1262 [2012]).[4] Nonetheless, there is nothing in the record to indicate that it would not be in the child’s best interests to grant the father’s request that he have direct access to the child’s medical and educational records (see Matter of Deyo v Bagnato, 107 AD3d 1317, 1320 [2013], lv denied 22 NY3d 851 [2013]; Matter of Ruple v Harkenreader, 99 AD3d 1085, 1087 [2012]) and we modify the custody order, accordingly. To the extent not specifically addressed herein, the father’s remaining contentions have been examined and are unavailing.
Peters, EJ., Lahtinen and Egan Jr., JJ., concur. Ordered that the order is modified, on the law, without costs, by directing that respondent shall have direct access to the child’s medical and educational records, at his own expense, and, as so modified, affirmed.

. DePew was also friendly with the mother and testified that she was willing to supervise the father’s visitation with the subject child.

. The record also contains an order to show cause signed by Family Court (McGinty, J.) which, among other things, assigned the matter to the JHO.

. DePew was present for the latter part of this incident and confirmed the father’s attempt to hang himself.

. Although the father requested that the paternal grandmother be authorized to supervise his visits with the child, the mother testified that she could not trust that the grandmother would not leave him alone with the child because she had done so in the past.