Lynch, J.
Appeal from an order of the Supreme Court (Ames, J.), entered March 8, 2013 in Tompkins County, which, among other things, awarded plaintiff sole custody of the parties’ younger daughter.
Plaintiff (hereinafter the father) and defendant (hereinafter the mother) are the parents of two daughters (born in 1996 and 2005).[1] The father commenced an action for divorce and left the marital residence in September 2009, while the children remained in the residence with the mother. In December 2009, the parents agreed that the mother would have temporary custody of both children and the father would have supervised parenting time with them. After two supervised visits, the father exercised unsupervised parenting time with the younger daughter (hereinafter the child). A hearing on the issues of custody and parenting time commenced in March 2011 and continued on a number of days, concluding in November 2012. During the course of the hearing, Supreme Court granted the father sole temporary custody of the child, citing, among other things, the negative influence of the mother and older daughter. The court ultimately awarded the parties joint legal custody of the older daughter, with physical custody to the mother, and sole legal and primary physical custody of the child to the father, with parenting time to the mother. The mother appeals.
*1007 The “primary concern in any custody determination is the best interest of the child” (Matter of Jolynn W. v Vincent X., 85 AD3d 1217, 1217 [2011], lv denied 17 NY3d 713 [2011] [citation omitted]). To address this concern, “a court must view all of the circumstances while considering certain factors, such as the parents’ ability to provide a stable home environment for the [child], the [child’s] wishes, the parents’ past performance, relative fitness, ability to guide and provide for the [child’s] overall well-being, and the willingness of each parent to foster a relationship with the other parent” (Bowman v Engelhart, 112 AD3d 1187, 1187 [2013] [internal quotation marks and citation omitted]). As this Court accords great deference to the trial court’s factual findings and credibility assessments, that court’s determination will not be disturbed if supported by a sound and substantial basis in the record (see Matter of Jarren S. v Shaming T., 117 AD3d 1109, 1110 [2014]; Bowman v Engelhart, 112 AD3d at 1188; Matter of Torkildsen v Torkildsen, 72 AD3d 1405, 1406 [2010]).
Here, during the lengthy hearing, Supreme Court considered testimony from, among others, Arlene Staubsinger, the court-appointed forensic psychologist, other mental health treatment providers, a teacher, childcare providers, and a school counselor. The court also conducted a Lincoln hearing with both children. Based on all the testimony, the court concluded that, while the mother is a loving parent, the father is more able to provide for the child’s physical and emotional well-being. To the extent that the mother claims that the court’s determination lacks a sound and substantial basis, we disagree.
In her initial report prepared in 2010, Staubsinger concluded that the mother had become overly enmeshed with the older daughter and that, consequently, that daughter became alienated from her father. During the fact-finding hearing, and after this report was issued, the mother introduced an audiotape of a conversation that she had with the child, who was six years old at the time, wherein they discussed whether and how the mother might be able to modify the existing visitation schedule. The audiotape revealed the mother’s inability to make decisions independently and to set boundaries for her daughter. Moreover, it supported the forensic psychologist’s concern that the child could become enmeshed and alienated as a result of her mother’s conduct. In a follow-up report prepared in 2012 that focused on the child, Staubsinger concluded that the mother had “made significant gains” since the initial report, but that her personality “propagates a tendency to become overly enmeshed” with the people she loves. Staubsinger noted that *1008 when the child was with her father, his paramour and her children, she was comfortable and willing to talk about her mother and older sister. In contrast, when she was with her mother, she was more guarded and anxious when asked to speak about time spent with the father.
“Evidence that the custodial parent intentionally interfered with the noncustodial parent’s relationship with the child is so inconsistent with the best interests of the child as to, per se, raise a strong probability that the offending party is unfit to act as custodial parent” (Jeannemarie O. v Richard P., 94 AD3d 1346, 1348 [2012] [internal quotation marks and citation omitted]). Here, the evidence demonstrated that, as a result of the mother’s conduct, the older daughter had become severely alienated from her father. While there was no finding that the mother’s conduct was intentional, there was also no clear indication that she recognized that the children are entitled to have a meaningful relationship with their father and that it is her responsibility to encourage such a relationship (see id.).[2] Staubsinger testified both that the child was demonstrably happy and at ease with her father and that, due to the mother’s personality, she was at risk of becoming enmeshed and alienated if the mother were awarded primary custody. While Supreme Court was not required to follow the forensic psychologist’s recommendation (see Matter of Maliha v Maliha, 13 AD3d 1032, 1033-1034 [2004]), it was certainly authorized to consider and credit her opinion as part of its best interests analysis (see Jeannemarie O. v Richard P., 94 AD3d at 1348).
Contrary to the mother’s claims, Supreme Court did assess the propriety of the father’s behavior. For example, the court noted the father’s “rigid” adherence to the schedule establishing the mother’s telephone contact and parenting time with the child, and that such rigidity conflicted with his general obligation to encourage the child’s relationship with her mother. This conduct was attributed to guidance that the father had received from certain mental health professionals and attorneys. He testified that he sought advice to help the child adjust to the custodial changes and believed that he was acting in her best interests. While the mother also claimed that the father did not consult her with regard to the child’s medical care, the court credited the father’s testimony that he believed, mistakenly, that prior consultation was unnecessary. Similarly, the father explained that he advised the mother in advance that the child would be attending school in the school district where he lived, although he could not recall whether he disclosed the specific *1009 school that she would attend. He testified that the school was closer to both his office and the mother’s home. The record confirms that, at times, both parties allowed their mutual animosity to impede effective communication and parenting during the course of this prolonged and difficult dispute. Under all the circumstances, we defer to Supreme Court’s determination, made after evaluating all of the conflicting testimony and evidence, that the mother was less credible than the father and his conduct was less harmful than hers (see Matter of Parchinsky v Parchinsky, 114 AD3d 1040, 1041 [2014]; Matter of Michelle V. v Brandon V., 110 AD3d 1319, 1325 [2013]; Matter of Greene v Robarge, 104 AD3d 1073, 1076 [2013]).
We are mindful that the sibling children were separated as a result of Supreme Court’s custody order, a generally undesirable result (see Eschbach v Eschbach, 56 NY2d 167, 173 [1982]). Over time, however, this general preference “has been tempered by the dynamics of family life . . . where the record indicates that the best interest [s] of each child lies with a different parent” (Matter of Donahue v Buisch, 265 AD2d 601, 604 [1999] [internal quotation marks and citation omitted]). Here, Supreme Court’s decision reflects its concern that the sisters would be separated, but that their separation was outweighed by other factors, including their ages and the concern that the child could be negatively influenced. This assessment is supported by the record and is entitled to deference (see Matter of Joseph WW. v Michelle WW., 118 AD3d 1054, 1056-1057 [2014]).
The mother’s argument that Supreme Court should have drawn a negative inference from the father’s failure to call certain witnesses is without merit, as she does not demonstrate that the mental health providers were under the father’s control (see Matter of LaRussa v Williams, 114 AD3d 1052, 1053-1054 [2014]). Similarly, under the circumstances, and particularly because the forensic psychologist testified with regard to her observations of the child with her father, his paramour and her children, we cannot say that the court should have drawn a negative inference from the fact that the paramour did not testify (see Matter of John HH. v Brandy GG., 52 AD3d 879, 880 [2008]).
Finally, while not determinative, we note that the attorney for the child argued that the child’s best interests would be served by remaining in her father’s custody (see Hughes v Gallup-Hughes, 90 AD3d 1087, 1090 [2011]). The record confirms that the parents undoubtedly love their children, but have made mistakes during the course of this acrimonious dispute that have caused their children to suffer. While it was *1010 generally acknowledged that the mother is capable, there is no record basis to disturb Supreme Court’s finding that, under the circumstances, the father is the parent more able to provide for the child’s physical and emotional well-being {id. at 1089-1090). We find that there is a sound and substantial basis in the record for the conclusion that it was in the child’s best interests to grant physical custody to the father.
To the extent not addressed herein, the mother’s remaining contentions have been considered and are without merit.
Stein, J.E, McCarthy, Garry and Devine, JJ., concur.
Ordered that the order is affirmed, without costs.

. Inasmuch as the older daughter turned 18 years old during the pendency of this appeal, any issues with regard to her custody or visitation are moot (see Matter of Heidi E. [Tresea F.—Phyllis G.J., 68 AD3d 1174, 1174 [2009]).

. The audiotape presented during the hearing actually shows otherwise.