Matter of Kanya J. v Christopher K. (2019 NY Slip Op 06030)





Matter of Kanya J. v Christopher K.


2019 NY Slip Op 06030


Decided on August 1, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: August 1, 2019

526486

[*1]In the Matter of KANYA J., Appellant,
v
CHRISTOPHER K., Respondent. (Proceeding No. 1.) (And Another Related Proceeding.)
In the Matter of CHRISTOPHER K., Respondent,
 v
v
KANYA J., Appellant. (Proceeding No. 3.) (And Three Other Related Proceedings.)

Calendar Date: June 7, 2019

Before: Egan Jr., J.P., Lynch, Mulvey, Devine and Rumsey, JJ.


Michelle I. Rosien, Philmont, for appellant.
Larisa Obolensky, Delhi, for respondent.
Michelle E. Stone, Vestal, attorney for the child.



MEMORANDUM AND ORDER
Lynch, J.
(1) Appeal from an order of the Family Court of Broome County (Young, J.), entered February 20, 2018, which, among other things, dismissed petitioner's application, in proceeding [*2]No. 1 pursuant to Family Ct Act article 6, for modification of a prior order of custody, (2) appeal from an order of said court, entered March 22, 2018, which granted petitioner's application, in proceeding No. 3 pursuant to Family Ct Act article 4, for modification of a prior order of child support, and (3) motion to strike the attorney for the child's brief.
Kanya J. (hereinafter the mother) and Christopher K. (hereinafter the father) are the parents of one child (born in 2011). Pursuant to a consent order entered in March 2017, the mother had sole custody of the child and the father was granted a graduated parenting time schedule. In April 2017, the mother commenced the first proceeding seeking to modify the March 2017 order by decreasing the father's parenting time to one hour of supervised parenting time after the child came home bruised following a visit with the father. Thereafter, the father commenced a proceeding seeking to hold the mother in violation of the March 2017 order for failing to allow him parenting time with the child. The father then commenced a support modification proceeding, a modification proceeding requesting joint legal custody with either primary physical placement or increased parenting time and a second violation proceeding. After a temporary order was issued in July 2017, requiring make-up parenting time and continuing the parenting time schedule of the March 2017 order, the father filed a third violation petition alleging that he had not had any court-ordered parenting time with the child.
Following a fact-finding hearing and a Lincoln hearing, Family Court issued an order in February 2018, which, among other things, granted the father joint legal custody of the child, ordered that the mother and other third parties not contact the child during the father's parenting time, ordered that a third party transport the child to the father's residence at the beginning of each period of parenting time and found the mother to be in willful violation of the March 2017 order. Following a second fact-finding hearing on the father's support modification petition, the court issued an order in March 2018 suspending the father's child support obligation from June 21, 2017 to February 8, 2018 and crediting any money collected during that period against the father's current support obligation and any arrears. The mother appeals from both orders.
Initially, we must decide the mother's motion to strike the attorney for the child's brief on the basis that the attorney for the child failed to indicate in her brief whether she had met with the child, what the child's preferences were and why she was substituting her judgment [FN1]. In her responding affirmation, and again during oral argument, the appellate attorney for the child confirmed that she had interviewed the child and had determined that the arguments made by the trial attorney for the child were still appropriate arguments on the appeal. We find that the foregoing demonstrates that the appellate attorney for the child has complied with the requirements of 22 NYCRR 7.2 (d) (3) and, therefore, the mother's motion is denied.
As to the merits, we are not persuaded by the mother's contention that Family Court improperly awarded joint legal custody to the father and changed the parenting time order. "A parent seeking to modify an existing custody [and parenting time] order first must demonstrate that a change in circumstances has occurred since the entry thereof that is sufficient to warrant the court undertaking a best interests analysis in the first instance; assuming this threshold requirement is met, the parent then must show that modification of the underlying order is [*3]necessary to ensure the child's continued best interests" (Matter of Brandon E. v Kim E., 167 AD3d 1293, 1294 [2018] [internal quotation marks and citations omitted]; see Matter of Thompson v Wood, 156 AD3d 1279, 1280 [2017]). "Where, as here, Family Court fails to make the requisite threshold analysis, this Court may review the record and render an independent determination as to whether the parent seeking modification established a change in circumstances" (Matter of Richard GG. v M. Carolyn GG., 169 AD3d 1169, 1170 [2019] [internal quotation marks and citations omitted]; see Matter of Crystal F. v Ian G., 145 AD3d 1379, 1380-1381 [2016]).
At the fact-finding hearing, the father testified that, from April 2017 to September 2017, he "maybe" had three visits with the child because the mother missed the visits and also missed the make-up visits. According to the father, when the child actually did come to the visits, he sat in a chair by the door, would not move, talk or eat and was constantly on the phone with the mother. For her part, the mother acknowledged that, on two weekends in April 2017, she did not take the child to the visits with the father and the father never received make-up parenting time for those missed visits. As to other visits between April 2017 and September 2017, the mother testified that she drove the child to the father's residence, but, when the child refused to leave the car and go inside, she would leave with the child. Beyond interfering with the father's right to parenting time, Family Court also found that the mother coached the child to benefit herself. Based on the foregoing, and granting deference to Family Court's credibility findings, we find that the father satisfied his threshold burden of establishing a change in circumstances (see Matter of Crystal F. v Ian G., 145 AD3d at 1381; Matter of Graham v Morrow, 111 AD3d 1178, 1179-1180 [2013]).
Turning to the best interests analysis, "the relevant factors include the parents' past performance and relative fitness, their willingness to foster a positive relationship between the child and the other parent, as well as their ability to maintain a stable home environment and provide for the child's overall well-being" (Matter of Turner v Turner, 166 AD3d 1339, 1339 [2018] [internal quotation marks and citations omitted]; see Matter of Montoya v Davis, 156 AD3d 132, 135 [2017]). In light of Family Court's broad discretion in fashioning an appropriate parenting time schedule that promotes the child's best interests (see Matter of Porter-Spaulding v Spaulding, 164 AD3d 974, 974 [2018]), and deferring to the Court's factual findings and credibility determinations (see Matter of Richard GG. v M. Carolyn GG., 169 AD3d at 1171; Matter of Heather U. v Janice V., 152 AD3d 836, 839 [2017]), we find that Family Court's determination as to parenting time is supported by a sound and substantial basis in the record. As to the court's change from the mother having sole legal custody to the parties having joint legal custody, "an award of joint custody is an aspirational goal in every custody matter" (Matter of Crystal F. v Ian G., 145 AD3d at 1382 [internal quotation marks and citations omitted]). Although the parties have had disagreements, we defer to Family Court's assessment that their relationship is not so acrimonious as to render the joint custody award unworkable (see Matter of Patricia RR. v Daniel SS., 172 AD3d 1471, 1471 [2019]; Ehrenreich v Lynk, 74 AD3d 1387, 1388-1399 [2010]).
The mother also raises various challenges to Family Court's order relating to transportation of the child to the father's home and her ability to contact the child during such visits. As the record shows that the father's parenting time was frustrated by the prior unworkable transportation methods and because the child frequently called the mother during his visitations with the father, these provisions in the award have a sound and substantial basis in the record. We do find, however, that given the child's age, the court should not have ordered that [*4]the child "may" contact the mother at least once each day. Rather, we find that the father should have been directed to facilitate at least one daily phone call from the child to the mother during parenting time.
The mother also challenges Family Court's determination with respect to the child's counseling. She contends, specifically, that the order gives "the [f]ather the right to participate in counseling without consultation or recommendation of the counselor." This characterization is not accurate. Although the order does say that "the father shall have access to the child's counseling and participate," that provision is clarified by the court's bench decision. In directing that the child remain in counseling, the court elaborated that the mother is required "to inform [the father] of the counselor . . . the child is seeing and [the father] shall update with the counselor to see if therapeutic counseling with him involved is necessary." Under the circumstances presented, the court acted within its discretion in so holding.
We also find that Family Court erred in suspending the father's child support obligation from June 21, 2017 to February 8, 2018 and ordering the money collected during that period to be credited back to the father. Although a court may suspend child support payments for a period where "the custodial parent has 'wrongfully interfered with or withheld visitation'" (Whitaker v Case, 122 AD3d 1015, 1019 [2014], quoting Matter of Luke v Luke, 90 AD3d 1179, 1182 [2011]; see Domestic Relations Law § 241), absent special circumstances, not present here, the suspension must be prospective (see Katz v Katz, 55 AD3d 680, 688 [2008]; Alan D. Sheinkman, Practice Commentaries, McKinney's Cons Law of NY, Book 14, Domestic Relations Law § 241 at 22-23; compare Whitaker v Case, 122 AD3d at 1020). We further find that even where, as here, child support payments are suspended due to a parent's interference, the "strong public policy against restitution or recoupment of support payments" is applicable (Johnson v Chapin, 12 NY3d 461, 466 [2009]). Family Court therefore had no authority to "credit[] back" to the father the payments he made during the period of suspension against his current support obligation or the arrears (see Whitaker v Case, 122 AD3d at 1020-1021).
The mother next contends that Family Court erred in finding her in contempt for willful violation of the March 2017 order [FN2]. "To sustain a finding of civil contempt for a violation of a court order, a petitioner must show by clear and convincing evidence that there was a lawful court order in effect that clearly expressed an unequivocal mandate, that the person who allegedly violated the order had actual knowledge of its terms, and that his or her actions or failure to act defeated, impaired, impeded or prejudiced a right of the moving party" (Matter of Richard GG. v M. Carolyn GG., 169 AD3d at 1172 [internal quotation marks and citations omitted]; see Matter of Kieran XX. [Kayla ZZ.], 154 AD3d 1094, 1096 [2017]). The record reflects that the mother was aware of a clear and unambiguous court order directing parenting time between the child and the father. Nonetheless, there were numerous instances during the relevant time period of the violation petitions where the mother failed to bring the child to the father's residence for parenting time or otherwise interfered with his time, thereby prejudicing his right to have parenting time with the child. As such, the father has established, by clear and convincing evidence, that the mother willfully violated the March 2017 order (see Matter of Khan v Khan, 140 AD3d 1252, 1254 [2016]; Matter of Paul A. v Shaundell LL., 117 AD3d 1346, 1348 [2014], lv dismissed and denied 24 NY3d 937 [2014]). Finally, inasmuch as there [*5]was no showing of a statutory basis for disqualification (see Judiciary Law § 14) or that the court was biased or prejudiced against the mother, Family Court did not abuse its discretion in denying the mother's recusal motion (see Matter of Moore v Palmatier, 115 AD3d 1069, 1070 [2014]; Matter of Adams v Bracci, 100 AD3d 1214, 1215 [2012]; Matter of Shaffer v Winslow, 17 AD3d 766, 768 [2005]). The mother's remaining contentions have been considered and are without merit.
Egan Jr., J.P., Mulvey, Devine and Rumsey, JJ., concur.
ORDERED that the motion is denied, without costs.
ORDERED that the order entered February 20, 2018 is modified, on the law, without costs, by reversing so much thereof as provided that the child may contact Kanya J. by telephone at least once a day; Christopher K. shall initiate telephone contact between the child and Kanya J. at least once each day during his parenting time; and, as so modified, affirmed.
ORDERED that the order entered March 22, 2018 is modified, on the law, without costs, by reversing so much thereof as ordered restitution of child support payments made by Christopher K. for the period from June 21, 2017 through February 8, 2018, and, as so modified, affirmed.



Footnotes

Footnote 1: Contrary to the father's contention, the mother has standing to bring this motion inasmuch as a child in a custody matter does not have full party status (see Matter of Lawrence v Lawrence, 151 AD3d 1879, 1279 [2017]; Matter of Kessler v Fancher, 112 AD3d 1323, 1324 [2013]).

Footnote 2: Although one of the three contempt petitions occurred following the issuance of the July 2017 temporary custody order, Family Court did not reach the issue of whether the mother violated the July 2017 temporary custody order.